MARVIN, Judge.
In exercise of our supervisory jurisdiction, we ordered the record to review the sufficiency of the evidence upon which Donald Wren was convicted of DWI 2d offense.
Finding the evidence sufficient to convict beyond a reasonable doubt, we affirm. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The State did not prove the exact time defendant’s pickup was driven in the ditch. Defendant relies on this lack of evidence (who was driving when) to premise his argument that the evidence otherwise is legally insufficient, citing State v. Lindinger, 357 So.2d 500 (La.1978), and State v. Graham, 422 So.2d 123 (La.1982). The evidence otherwise distinguishes defendant’s circumstances from the cited cases and convicts the defendant.
FACTS
Deputy Sheriff Adams and State Trooper Carson were dispatched to the scene of a reported one-vehicle accident on October 9, 1988, in front of a church one mile north of Coushatta on U.S. Hwy. 71. Deputy Adams arrived first and found defendant and another apparently outside of defendant’s pickup which had run into the ditch in front of the church. Both individuals appeared intoxicated. Deputy Adams inquired “how the accident happened [and] who was driving.” Adams testified that defendant said it was his vehicle and he was operating it at.the time [of the accident].
Trooper Carson arrived shortly after Adams. He obtained defendant’s driver’s license and vehicle registration from Deputy Adams and “asked for the driver.” Defendant identified himself.
I observed both of the individuals. They both appeared to be intoxicated.... After being able to observe [defendant] ... and by his statement that he was driving *890 the vehicle ... [defendant] was given his rights per Miranda ... At that time I continued on ...
... three [field sobriety tests] ... were done at the scene [and defendant was placed under arrest] ...
Trooper Carson’s Intoxilyzer test, taken at the sheriffs office at 9:15 p.m., showed defendant’s blood alcohol was .298 grams percent.
Trooper Carson said he twice questioned defendant about drinking and driving, “Once immediately upon my arrival at the scene and once after the test was given here at the Sheriff’s Office ... The response both times was that he had been driving, and he had been drinking.”
Q. Did he know how much he had been drinking?
A. No, sir. He said he had been drinking beer, had been working on a mobile home most of the day, and he wasn’t sure how much.
In an ice chest in the cab of defendant’s truck Trooper Carson found one unopened can of beer.
The trial court concluded:
[Defendant], for whatever reason, decided to tell the trooper ... after Miranda warnings had been given, that he had in fact been drinking prior to the driving of the vehicle. I think he convicted himself. And therefore, I have no hesitancy in finding [him] guilty ...
The argument that defendant could have consumed enough beer to reach .298 grams percent blood alcohol after he drove his truck in the ditch “2⅛ hours ... or 16 hours before the officers got there” is only a possible hypothesis of innocence. This hypothesis was found by the trial court, impliedly, and is found by us, expressly, to be unreasonable. See State v. McFadden, 476 So.2d 413 (La.App. 2d Cir.1985), writ denied; LRS 15:438.
We agree with the trial court’s conclusions notwithstanding that the only exact time on October 9, 1988, that is mentioned in the record is 9:15 p.m. when Trooper Carson administered the intoxilyzer test to defendant in the sheriff’s office in Coushat-ta on that date.
That time, 9:15 p.m., on that day, October , 9, 1988, corresponds to defendant’s statements to Trooper Carson that he had been drinking and driving, that “he had been drinking beer, had been working on a mobile home most of the day, and he wasn’t sure how much [beer he had been drinking].” Defendant told Deputy Adams that he was operating the truck at the time it ran into the ditch.
This “accident” occurred on a U.S. Highway (71) one mile north of Coushatta after defendant had spent most of the day working and drinking beer. The “accident” was reported to traffic authority or authorities, who responded. Defendant did not cross-examine the officers about empty beer cans in the truck or at the scene. Only one can of beer is mentioned by the trooper who looked into the truck and the ice chest within. After field sobriety tests and Miranda warnings were administered defendant was taken to the Sheriff’s Office about one mile away where at 9:15 p.m. the intoxilyzer test was administered.
Defendant’s circumstances are distinguished from Lindinger. In Lindinger’s truck, the trooper found a “fifth of whisky, three-quarters gone ...” 357 So.2d at 501. In Graham, affirming a 2d degree murder conviction, defendant’s arguable and possible hypothesis of innocence was found “unlikely,” “unusual,” and therefore not a “reasonable hypothesis.” Compare the respective facts in the several DWI cases cited in State v. Phinney, 460 So.2d 1188 (La.App. 2d Cir.1984). Compare State v. Trahan, 534 So.2d 73 (La.App. 3d Cir.1988). The result in each case, of course, is governed by its own circumstances. Phinney, supra, at 1189.
The result here is that by his admissions to the officers, this defendant convicted himself beyond a reasonable doubt.
DECREE
AFFIRMED.
Norris, J., dissents and assigns written reasons.