774 So.2d 1022 (2000)
Gerard DARBONNE and Trisha L. Darbonne
v.
WAL-MART STORES, INC., Johnson Controls, Inc. and Old Republic Minnehoma Insurance Company.
No. 00-551.
Court of Appeal of Louisiana, Third Circuit.
November 2, 2000.
Rehearing Denied December 28, 2000.
*1024 Arthur W. Landry, Elizabeth S. Schell, PlauchÉ, Maseli, Landry & Parkerson, New Orleans, LA, Counsel for Defendants/Appellants, Johnson Controls, Inc. and Wal-Mart Stores, Inc.
Chris Villemarette, Craig A. Davis, J. Minos Simon, J. Minos Simon, Ltd., Lafayette, LA, Counsel for Plaintiffs/Appellees Gerard Darbonne and Rrisha L. Darbonne.
(Court composed of Judge HENRY L. YELVERTON, Judge ULYSSES GENE THIBODEAUX and Judge SYLVIA R. COOKS).
THIBODEAUX, Judge.
The defendants, Johnson Controls, Inc. and Old Republic Minnehoma Insurance Company, appeal a judgment in favor of the plaintiffs, Gerard and Tricia Darbonne, in this products liability suit. The trial judge found that the automotive battery manufactured by Johnson Controls was unreasonably dangerous when it left the control of the manufacturer. The court concluded that the battery's defective condition caused it to explode suddenly and without warning, and was therefore the cause of Gerard Darbonne's injuries. The court awarded Gerard Darbonne $15,000 in general damages plus medical expenses of $723.62 and Tricia Darbonne $1,000 in compensation for loss of consortium. The defendants appeal. We affirm the judgment of the trial court.

I.

ISSUES
We shall address the following issues:
(1) whether the trial court erred in failing to conduct the necessary inquiry into the qualification of plaintiffs' expert, Woodrow Nelson;

*1025 (2) whether the trial court erred in implicitly concluding that Mr. Nelson was qualified to testify as an expert in this case; and,
(3) whether the trial court was legally incorrect in concluding that plaintiffs' evidence was sufficient.

II.

FACTS
On October 26, 1995, the automotive battery in the pick-up truck belonging to Gerard Darbonne exploded when he turned the ignition key to start the engine. Mr. Darbonne heard a sound from under the hood resembling what he described as a "back-fire." He immediately exited the cab of the truck and opened the hood. Upon doing so, he experienced a searing pain in his eyes and on his face, apparently from the vapors given off by the battery in the explosion. Tricia Darbonne transported him to a hospital and subsequently to an eye center where he was seen by an ophthalmologist. Mr. Darbonne informed the doctor that he was unable to see, and the doctor instructed him to rest his eyes and await the return of his sight. After approximately ten days, during which time he remained in his home with his eyes completely covered, he felt his sight begin to return. He claims that he continues to suffer from a sensitivity to bright lights and wears tinted glasses or sunglasses most of the time.
The battery that exploded was purchased by Mr. Darbonne at Wal-Mart in Lafayette. It was manufactured by defendant-appellant, Johnson Controls, Inc. The Darbonnes retained Woodrow Nelson, a mechanical engineer who works in the areas of mechanical and electrical fires and explosions, as an expert witness. Prior to trial, Mr. Nelson was deposed by the defendants. At the trial his deposition was submitted by the plaintiffs in lieu of live testimony. Mr. Nelson traced the cause of the battery explosion to a defect in the battery consisting of improper welding between the plate tab and strap in cell number 6. The defendants, Johnson Controls, Inc. and Old Republic Minnehoma Insurance Company, offered the testimony of David Schindler, an employee of Johnson Controls, Inc. Mr. Schindler testified that the explosion was caused by overcharging the battery. He stated that this overcharge was probably the result of a faulty voltage regulator in the Darbonne's truck and that, therefore, the manufacturer was not responsible for the explosion. The trial court found that the battery was defective in construction or composition which constituted an unreasonably dangerous condition at the time the battery left the control of the manufacturer. The defendants appeal liability.

III.

LAW AND DISCUSSION

The Standard of Review
The reviewing court must give great weight to the factual conclusions of the trial court. Linzay v. Haas Inv. Co., Inc., 576 So.2d 1178 (La.App. 3 Cir.1991). Manifest error is the standard used by appellate courts to resolve conflicting factual evidence. Ambrose v. New Orleans Police Department Ambulance Service, et al., 93-3099 (La.7/5/94); 639 So.2d 216. This means that where a reasonable factual basis exists for those findings, they should not be disturbed by the appellate court in the absence of manifest error. Linzay, 576 So.2d 1178. A court of appeal may set aside a trial court's or a jury's finding of fact if it finds that there was manifest error or if the decision was clearly wrong. Mistich v. Volkswagen, 95-0939 (La.1/29/96); 666 So.2d 1073; Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). If the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if it is convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *1026 Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). For the reviewing court, the issue to be resolved is not whether the trier of fact was wrong but whether the factfinder's conclusions were reasonable. Stobart, 617 So.2d 880; Theriot v. Lasseigne, 93-2661 (La.7/5/94); 640 So.2d 1305. Thus, where there is a conflict in the testimony, the trial court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review even if the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux, 365 So.2d 1330; Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985).
The defendants argue that the manifest error standard of appellate review should not apply here because Mr. Nelson, plaintiff's expert, did not appear in court. Instead, his findings were offered and accepted into evidence by means of a written deposition. They argue that the use of a written document rather than a live witness defeats the very purpose of the manifest error standard of review. It is true that one of the rationales for the application of the manifest errorclearly wrong rule in factual determinations is that of the accordance of due deference to the fact finder in witness credibility determinations. Mistich v. Volkswagen of Germany, Inc. et al., 95-0939 (La.1/29/96); 666 So.2d 1073; Rosell, 549 So.2d 840. Here, defendants argue, the trial court did not make a judgment as to the witness's demeanor and tone of voice which may bear on the listener's understanding and belief in what is said. However, Louisiana law applies the manifest error rule even when the evidence before the trier of fact consists solely of written reports, records and depositions. Shephard v. Scheeler, 96-1690 (La.10/21/97); 701 So.2d 1308; Guaranty Bank and Trust Co. of Alexandria v. Holiday Inn of Leesville Partnership, 525 So.2d 638 (La.App. 3 Cir.1988). Manifest error applies to all findings of fact regardless of the form of the evidence.
Further, the defendants argue that the manifest error standard of review should not apply because the trial court wrongly found that the evidence presented by the plaintiffs was sufficient to carry their burden of proof by a preponderance of the evidence. The defendants correctly argue that the sufficiency of the evidence is a legal issue and the manifest error rule applies only to issues of fact. The Louisiana Supreme Court has ruled that if a trial court commits legal error which interdicts the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine by a preponderance of the evidence. Evans v. Lungrin, 97-541 (La.2/6/98); 708 So.2d 731.
Insufficiency of the evidence arguments ordinarily apply when the party with the burden of proof lacks the necessary evidence to tip the scales over to the level of the applicable standard, whether it be by beyond a reasonable doubt, by clear and convincing evidence, or as here, by a preponderance of the evidence. They also ordinarily apply when the evidence is undisputed, but the defendant contends that, as a matter of law, the evidence is simply too tenuous to reach the required burden of proof. Here, in fact, the Darbonnes, the party bearing the burden of proof, do offer evidence to prove the elements of their cause of action in the form of the testimony of their expert witness. This evidence is contested by Johnson Controls and its insurer who offer their own expert testimony. The case therefore boils down to a battle of the experts over how to explain the cause of the explosion by looking at the battery after the fact. As the reviewing court, we must first resolve any factual conflicts by application of the manifest error rule. Ambrose, 639 So.2d at 224 (Lemmon, J. concurring). This rule dictates that the appellate court should not disturb *1027 the express or implied factual findings of the trier of fact. Id. Therefore we, as the reviewing court, must view all of the evidence in the light most favorable to the party who prevailed in the trial court. This evidence, which consists both of undisputed facts, that is, the explosion of the battery, and of disputed facts, that is, the cause of the explosion, is thus viewed under the manifest error rules.

The Court's Inquiry into the Qualifications of Plaintiff's Expert Witness
The defendants assert that the trial judge did not conduct the necessary inquiry into the qualifications and expertise of Woodrow Nelson, plaintiffs' expert witness, prior to accepting his testimony. The defendants apparently take issue with the fact that Mr. Nelson's deposition and his curriculum vitae were accepted into evidence without a formal tender of his qualifications to the court.
The requirements of expert testimony are set forth in La.C.E. art. 702. It states as follows:
[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
In Mistich, 95-0939, 666 So.2d 1073, the Louisiana Supreme Court pronounced its standard of review for the appellate courts with regard to a trial court's decision for the admissibility of expert testimony pursuant to La. C.E. art. 702 stating that "[a] trial judge has wide discretion in determining whether to allow a witness to testify as an expert, and his judgment will not be disturbed by an appellate court unless it is clearly erroneous." Id. at 1079. Louisiana has adopted the United States Supreme Court's interpretation of Federal Rule of Evidence 702, which mirrors Louisiana Code of Evidence Article 702. State v. Foret, 628 So.2d 1116 (La.1993); White v. State Farm Mutual Automobile Ins. Co., 95-551 (La.App. 3 Cir. 7/17/96); 680 So.2d 1; See Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Daubert calls upon trial courts to perform a gatekeeping function by deciding whether the expert evidence or testimony is both reliable and relevant. Daubert, 509 U.S. at 588, 113 S.Ct. at 2794. Another recent Supreme Court case has recognized that Daubert's "gatekeeping" obligation applies not only to "scientific" testimony, but also to testimony based on technical and other specialized knowledge. Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).
However, although the case law does call upon the trial court to exercise discretion in deciding whether or not to allow the expert witness to testify, the law does not specify the manner in which the trial judge is to do so. The defendant cites no law, either statutory or judicial, which would require a particular type of inquiry into the qualifications of an expert witness prior to his acceptance by the court. Instead it is only incumbent upon the trial judge to consider certain factors, either expressly or privately, before deciding whether to accept an individual as an expert. Therefore, there was no error in the court's inquiry into Mr. Nelson's qualifications.
The defendant further argues that because the court did not conduct a sufficient inquiry into Mr. Nelson's background and expertise, it wrongly qualified him. The law is well settled that trial courts have broad discretion in determining how much and what kind of education and/or training adequately qualify an individual as an expert. For example, formal education or training in a particular field is not always necessary to qualify as an expert in a particular field. Aaron v. Bankers and Shippers Ins. Co. of New York, 475 So.2d 379 (La.App. 1 Cir.1985); *1028 Adams v. Chevron U.S.A., Inc., 589 So.2d 1219 (La.App. 4 Cir.1991), writ denied, 592 So.2d 414 (La.1992). Experience alone may be sufficient. Id. Where testimony of expert witnesses differs, it is for trier of fact to determine the most credible evidence and a finding of fact in this regard will not be overturned absent manifest error. Opelousas Production Credit Ass'n v. B.B. & H., Inc., 587 So.2d 812 (La.App. 3 Cir.1991). Ultimately, the fact finder must evaluate conflicting expert opinions in relation to all the circumstances of the case. Sportsman Store of Lake Charles, Inc. v. Sonitrol Security Systems of Calcasieu, Inc., 99-0201 (La.10/19/99); 748 So.2d 417; James v. Gordon, 95-1472 (La.App. 3 Cir. 12/4/96); 690 So.2d 787, writ denied, 97-0756 (La.5/1/97); 693 So.2d 738.
Although Mr. Nelson admitted to having no formal expertise in battery design or manufacture, he has been formally educated in mechanical engineering and explosions. He is a trained and highly experienced mechanical engineer employed in a firm of engineering and scientific consultants. His position for the last nineteen years has been that of senior forensic mechanical engineer in the investigation and analysis of hazards and accidents. Mr. Nelson has had extensive experience in his position in the investigation of explosions. His current work consists of the investigation and analysis of accidents, failures, hazards, design and safety in the areas of mechanical and electrical, materials, construction, fire and explosion. He has also had considerable experience with automotive batteries. Further, he is often called to testify for both plaintiffs and defendants in such cases and has thus been accepted as an expert witness in many jurisdictions. His previous testimony as an expert witness includes cases involving explosions and fires caused by automotive batteries. We cannot say that the trial court committed manifest error when it accepted the testimony of Mr. Nelson as an expert witness.
Further, deposition testimony can be used in lieu of live testimony. La.Code Civ.P. art. 1450. The requirements for the admissibility of a witness's deposition are: (1) that it be admissible under the Louisiana Code of Evidence; and (2) the witness must be either (a) unavailable; (b) residing over one hundred miles from the place of trial; or (c) in another state without provocation by the party offering the deposition. La.Code Civ.P. art. 1450 A(3)(a), (b), and (c). Mr. Nelson resides in Illinois and therefore is at great distance from a court in Louisiana. It was thus within the court's discretion to accept the deposition rather than insist that Mr. Nelson travel to Louisiana to testify in court.

The Court's Failure to Formally Qualify Plaintiffs Expert Witness
Johnson Controls and its insurer also argue that the trial court erred when it implicitly accepted the deposition testimony of plaintiffs' witness, Mr. Nelson, as an expert in the field of batteries and explosives without formally declaring him to be an expert in these fields. Although they cite no legal authority for their proposition, the defendants state in their brief that it was incumbent upon the court to make a formal ruling on the record that Mr. Nelson either was or was not qualified to testify as an expert in the area of automotive battery explosions.
There is no requirement that a party formally tender an expert witness or that a court formally declare that a witness is accepted as an expert. For example, in a criminal case we held that there was no error in permitting a detective to testify as an expert, even though court did not formally accept the detective as an expert, where the expert possessed sufficient practical experience as an expert in the packaging and distribution of marijuana to testify on that matter. State v. Martin, 543 So.2d 1020 (La.App. 3 Cir.1989). Here, Mr. Nelson's curriculum vitae listing his *1029 educational background and work experience was attached to the deposition. Mr. and Mrs. Darbonne's attorney offered the deposition and attachment into evidence. During the deposition, defendants' counsel questioned Mr. Nelson regarding his qualifications. The court heard the objections of the defense and then stated that these objections would be noted for the record. Thus, the court impliedly accepted the deposition testimony on Mr. Nelson's qualifications. The fact that the trial court accepted the testimony of Mr. Nelson as an expert without expressly so stating did not constitute error.

The Burden of Proof
Finally, Johnson Controls and its insurer argue that Mr. and Mrs. Darbonne did not establish their case by a preponderance of the evidence. They claim that the plaintiffs did not meet the requirements of the Louisiana Products Liability Act (LPLA) which would allow plaintiffs to recover damages for a defective product. Whether or not the battery manufactured by the defendants exploded and injured the plaintiff was not at issue in this case. Rather, the issue concerned the cause of the explosion of the battery. The LPLA establishes the exclusive theories of liability for manufacturers for damage caused by their products in La.R.S. 9:2800.54, which provides in pertinent part as follows:
A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
B. A product is unreasonably dangerous if and only if:
(1) The product is unreasonably dangerous in construction or composition as provided in La.R.S. 9:2800.55....
Louisiana Revised Statutes 9:2800.55 states:
A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.
The plaintiffs sought to prove that the battery was unreasonably dangerous in construction or composition due to a latent defect present when it left the control of the manufacturer. This defect allegedly caused a spark to appear precisely at the moment of ignition thus leading to the explosion. The defendants, conversely, argued that the explosion was caused by acts done by the plaintiff subsequent to purchase. That is, specifically, the defendants alleged that the battery had been overcharged. Both sides offered expert testimony to support their arguments.
In order to recover from a manufacturer under the theory of strict products liability, a plaintiff must prove by a preponderance of the evidence: (1) that the injury resulted from the condition of the product; (2) that the condition made the thing unreasonably dangerous to normal use; and (3) that the condition existed at the time the product left the control of the manufacturer. Bell v. Jet Wheel Blast, Div. of Ervin Ind., 462 So.2d 166 (La. 1985); Johnston v. Hartford Ins. Co., 623 So.2d 35 (La.App. 1 Cir.), writ denied, 626 So.2d 1170 (1993). In other words, recovery is allowed so long as the injured party proves by a preponderance of the evidence that the product which caused his harm was defective when it left the manufacturer's hands. Norris v. Bell Helicopter Textron, 495 So.2d 976 (La.App. 3 Cir.1986), writ denied, 499 So.2d 85 (La.1987).
The experts had to examine the destroyed battery and surmise as to what had caused the explosion based on the condition of the battery following the explosion. In his investigation of the cause *1030 of the explosion, Mr. Nelson, plaintiffs' witness, conducted a detailed analysis of the battery, both of the battery surface and of the plates within the cells. He took liberal notes of what he observed. He then created diagrams of his findings and used his formal knowledge and expertise in the fields of engineering and explosives. In the course of his investigation, he found manufacturing defects in the plate and strap of cell number 6 which he asserts caused the explosion.
In his deposition, Mr. Nelson states that when an automobile battery of this type has been properly made, the tab on the top of the plate is fused into the strap. In this battery on cell number 6, he found that one of the tabs was clearly separated from the strap. This is where he contends that the internal ignition occurred. It is his belief that this took place when Mr. Darbonne was starting or trying to start the engine and drawing heavy current from the battery. This heavy current draw, he testified, caused a spark to appear at the defective tab point in cell number 6. The spark then propagated the explosion to the rest of the battery. Mr. Nelson further testified that he believed that this separation of the tab of the plate from the strap either already was in existence when the battery left the manufacturer, or that the tab was so slightly fused to the strap when it left the manufacturer that it easily separated later. He also testified that the strap was not as long as it should have been. In his opinion, the plate separated from the tab either at the moment of the ignition or shortly thereafter or immediately thereafter, thereby causing the explosion.
Mr. Schindler, defendants' expert, conducted an investigation of the exterior of the battery and only where he noted the presence of corrosion. In his testimony he admits to not having looked inside the battery to determine if there were any interior defects. He theorized that the corrosion he examined on the battery had caused the plates of the cell to heat and expand thus leading to a plate to come into contact with the strap which caused the explosion. He stated that this corrosion was the result of continued overcharging of the battery. He blamed this overcharge of the battery on the presence of a defective voltage regulator in the plaintiffs' truck, although he had no evidence whatsoever that the regulator on the truck in fact was ever defective.
Admittedly, Mr. Nelson was unable to state with absolute certainty that what he surmised caused the spark leading to the explosion, which would have been the result of the latent defect, occurred at the precise moment of ignition; he could only state that it had occurred at some point prior to the explosion. However, to know this with absolute certainty is virtually impossible because in order to know that this in fact did occur, Mr. Nelson, or some other expert, would have to have been present, observing the battery at the very instant that it exploded. The trial court thus evaluated the evidence offered by the two expert witnesses as to their theories of the cause of the explosion. We cannot find that the trial court committed manifest error or was clearly wrong when it accepted the explanation of the cause of the explosion given by the plaintiffs' witness.
Nor can we find that the trial court erred in finding Mr. Nelson to be a more credible witness than Mr. Schindler. In contrast to Mr. Nelson's formal training as an engineer and his educational and work experience background in fire hazards and explosives, the defendants' expert has no real scientific background, either in formal education or in on-the-job experience. Mr. Nelson's educational background in the field of explosive materials is also much more impressive. He has a bachelor of science degree in mechanical engineering. He has taken a number of continuing education courses on electrical fires, fire and explosion hazards, and the fundamentals of fire and explosion evaluation. Mr. Schindler, on the other hand, has no college degree, although he did attend college. *1031 His course of study, however, consisted of industrial technology and business. He has no engineering background whatsoever. Instead, his experience and training have been in the areas of quality control and management.
Additionally, the trial court perhaps also considered the fact that, contrasted to the relatively unbiased qualifications of Mr. Nelson, Mr. Schindler has spent the last twenty-two years working for one of the defendants, as he continued to do at the time of the trial. His current position is that of manager of the technical services of the legal group for Johnson Controls, Inc., the manufacturer of the battery. Prior to this position, he worked as a lab technician in the battery quality insurance lab, also for Johnson Controls.
This court cannot say that the trial court committed manifest error when it deemed that the evidence presented by the plaintiff was sufficient to prove that the plates in the battery were not properly fused in design, constituting an unreasonably dangerous condition at the time the battery left the control of the manufacturer and that this unreasonably dangerous condition caused the battery to suddenly explode which caused the injuries to plaintiff. Nor can we say that it was manifest error for the court to believe the plaintiffs' expert and not that of the defendants. Obviously, it was not the defendants' burden to prove any alternative theories; however, it was reasonable for the trial court to discount Mr. Schindler's theory and accept that of Mr. Nelson. The trial court only needed to find by a preponderance of the evidence, that is, more likely than not, that Mr. Nelson's theory of the cause of the explosion was the correct one. In order for us to overrule the trial court's decision, we would have to find that other documents or objective evidence so contradict Mr. Nelson's theory or that his story itself was so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit it. See Rosell, 549 So.2d at 844. This we cannot do. We, therefore, affirm the judgment by the trial court.

IV.

CONCLUSION
For the foregoing reasons, the judgment in favor of the plaintiffs-appellees, Gerard and Tricia Darbonne, and against defendants-appellants, Johnson Controls Inc. and Old Republic Minnehoma Insurance Company, is affirmed. The defendants are ordered to pay all costs of this appeal.
AFFIRMED.