STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 13-865


ROBERT VEROLINE, JR., ET AL.

VERSUS

PRIORITY ONE EMS, ET AL.


**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 76,157, DIV. A
HONORABLE VERNON BRUCE CLARK, DISTRICT JUDGE

**********

**JOHN E. CONERY**
**JUDGE**

**********

Court composed of Marc T. Amy, Billy Howard Ezell, and John E. Conery, Judges.


**AFFIRMED.**


Gregory Engelsman
Bolen, Parker, Brenner,  Lee & Engelsman, LTD.
709 Verailles Boulevard
Post Office Box 11590
Alexandria, Louisiana  71315-1590
(318) 445-8236
COUNSEL FOR DEFENDANTS/APPELLEES:
     C.R.R. Enterprises, Inc. d/b/a Priority One
     Phillip Hutson
     Stewart Coleman

**Leslie R. Leavoy, Jr.**
**Leavoy Law Office**
**125 North Washington Avenue**
**Post Office Box 1055**
**DeRidder, Louisiana  70634**
**(377) 462-6051**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Robert Veroline, Jr.**
    **Cindy Veroline**
    **Joshua Paul Veroline**

**CONERY, Judge.**

## FACTS AND PROCEDURAL HISTORY

On July 4, 2005, Heather Veroline dislocated her knee while near the dam on Toledo Bend Reservoir, Texas side. Paramedics Phillip Hutson and Stewart Coleman arrived at the scene and, according to their testimony, Ms. Veroline was in severe pain. While Mr. Hutson prepared the ambulance and retrieved supplies, Mr. Coleman immobilized her knee, placed her on a gurney, and carried her about 1,000 yards to the ambulance. Both paramedics testified that Ms. Veroline and her mother requested that they administer pain medication. Mr. Coleman then administered morphine for the pain and phenergan to prevent the side effects of morphine, both through an IV. Shortly thereafter, Ms. Veroline gasped as if she was going to vomit. She then began shaking, gasping, and she went into ventricular fibrillation. Mr. Coleman administered narcan to reverse the effects of the morphine. He commenced chest compressions and Ms. Veroline projectile vomited. Mr. Coleman performed CPR, administered epinephrine, manually evacuated the vomit, and attempted to intubate and defibrillate her without success. He continued to perform CPR and attempted to defibrillate her until they arrived at the hospital, where she was pronounced dead shortly thereafter.

Ms. Veroline's parents, Robert and Cindy Veroline, and brother, Joshua Veroline, filed suit against C.R.R. Enterprises, Inc. d/b/a Priority One and the paramedics, Phillip Hutson and Stewart Coleman, alleging negligence, as they purportedly breached the standard of care. After a five-day jury trial and a short jury deliberation, the jury returned a verdict for defendants. Plaintiffs timely filed a motion for a new trial and a judgment notwithstanding the verdict, which were

both denied by the trial court. The plaintiffs appeal, asserting two assignments of error. For the following reasons, we affirm.

## ASSIGNMENTS OF ERROR[1]

I. The jury was manifestly erroneous by failing to find that the insertion of an IV and administration of morphine with phenergan violated the defendants' own written protocols and was therefore negligent or grossly negligent.

II. The jury was manifestly erroneous by failing to find that the defendants' failure to follow their own written protocols to treat allergic reactions immediately with epinephrine, not narcan was negligent or grossly negligent.

## LAW AND ANALYSIS

"[A]ppellate jurisdiction of a court of appeal extends to law and facts." La.Const. art. 5, § 10(B). The appellate court must determine whether the trial court committed an error of law or made a factual finding that was manifestly erroneous or clearly wrong. *Gibson v. State,* 99-1730 (La. 4/11/00), 758 So.2d 782, *cert. denied,* 531 U.S. 1052, 121 S.Ct. 656 (2000). The reviewing court must review the record in its entirety to make this determination. *Stobart v. State, Dep't of Transp. and Dev.,* 617 So.2d 880 (La.1993). "Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." *Id.* at 882.

This court has stated, "where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id.* at 883. *See Darbonne v. Wal-Mart Stores, Inc.*, 00-551 (La.App. 3 Cir. 11/2/00), 774 So.2d 1022. Additionally, "When the district court has permitted

---

[1] Although mentioned, the issues of the denial of appellants' post-verdict motions and the allegedly "hurried" jury deliberation were not briefed. Thus, we will consider the issues abandoned. Uniform Rules–Courts of Appeal, Rules 1–3 & 2–12.4.

both parties to present their experts before making its factual determinations, the fact finder's choice of alternative permissible views cannot be considered to be manifestly erroneous or clearly wrong." *Houssiere v. ASCO USA*, 12-791, p. 12 (La.App. 3 Cir. 1/16/13), 108 So.3d 797, 805-6 (quoting *Dumesnil v. Sw. La. Elec. Membership Corp.*, 08-982, p. 6 (La.App. 3 Cir. 2/4/09), 2 So.3d 1254, 1258), writ denied, 13-693 (La. 5/17/13), 118 So.3d 377. Furthermore, "[w]here the testimony of expert witnesses differ, it is for the trier of fact to determine the most credible evidence and a finding of fact in this regard will not be overturned absent manifest error." *Smith v. Cappaert Manufactured Hous., Inc.*, 11-1464, p. 11 (La.App. 3 Cir. 4/10/12), 89 So.3d 1234, 1242-3 (quoting *Opelousas Prod. Credit Ass'n v. B.B. & H., Inc.*, 587 So.2d 812, 814 (La.App. 3 Cir.1991)), writs denied, 12-1418 (La. 10/8/12), 98 So.3d 857 and 12-1516 (La. 10/12/12), 98 So.3d 871. *See also Revel v. Snow*, 95-462 (La.App. 3 Cir. 11/2/95), 664 So.2d 655, *writ denied*, 95-2820 (La. 2/2/96), 666 So.2d 1084. "The only time [the trial court's decision to accept the opinion of one expert and to reject that of another] will be deemed manifestly erroneous is when the court was clearly wrong in accepting the expert's opinion on which it relied." *Tullis v. Rapides Parish Police Jury*, 95-905, p. 8 (La.App. 3 Cir. 1/17/96), 670 So.2d 245, 250.

In this case, the appellants assert two assignments of error, both alleging that the jury was manifestly erroneous in its factual findings. Appellants do not contend, nor is there evidence in the record to support, that the trial court was erroneous in accepting the three experts and their opinions. The assignments of error concern Mr. Coleman's administration of morphine and phenergan, followed by narcan, and eventually epinephrine. Each drug administration or the timing thereof was allegedly in violation of appellee's own written protocols. Because

both assignments of error allege that the jury was manifestly erroneous in its factual findings, they will be discussed together.

At trial, the jury heard the testimony of several fact witnesses and three expert witnesses. Dr. John McMillan testified as plaintiff's only expert witness. He testified that, according to the defendants' own protocols, Mr. Coleman should not have administered morphine, should not have followed up with narcan, but should have administered epinephrine immediately upon Ms. Veroline's reaction. He further testified that Ms. Veroline did not demonstrate all of the symptoms of anaphylaxis, but that all of the symptoms and manifestations are not required for an anaphylaxis determination. Dr. McMillan concluded that Ms. Veroline died from morphine anaphylaxis. He further concluded that Mr. Coleman breached the standard of care and his course of treatment was a direct causal relationship to the morphine anaphylaxis and ultimately Ms. Veroline's death.

The appellees presented the jury with two expert witness as trial, Dr. James "Butch" Knoepp and Dr. Thomas Arnold. Dr. Knoepp testified that an anaphylactic reaction to morphine is "unusual." He further testified that he "searched high and low for evidence of anaphylaxis," but he could find none. Disagreeing with Dr. McMillian, Dr. Knoepp testified that anaphylaxis is a "cascade of events," which means that he is of the opinion that a patient is "not going to have just the trachea closing down without other parts of the body swelling, redness, manifesting." Dr. Knoepp acknowledged that the administration of narcan was not in appellees' protocol, but that "it was a thoughtful response." Dr. Knoepp concluded that he thinks that Ms. Veroline "died from ventricular fibrillation and the inability to defibrillate her." He testified that he does not

believe that Mr. Coleman breached the standard of care and stated that "this poor guy was a one-man band playing five instruments."

Dr. Arnold testified that a dislocated knee would be "extremely uncomfortable" and "quite painful." He testified that he did not have a problem with the administration of morphine. Regarding the narcan, he stated that he "would have done the same thing." He further testified that he did not think Ms. Veroline had an anaphylactic reaction, as it was not systemic or an "anaphylaxis picture." Dr. Arnold opined that Ms. Veroline had an adverse reaction to one of the medications given to her, but it was a reaction different from anaphylaxis. He stated that Mr. Coleman did an "admirable job." Dr. Arnold concluded that the standard of care was upheld.

The fact finder in this case, the jury, was presented with several alternative permissible views of what occurred on the day of Ms. Veroline's death. The jury found that the defendants had not breached the standard of care, apparently adopting some or all of the defense's expert's views. The jury decided which experts were credible and its adoption of those opinions cannot be considered manifestly erroneous. Therefore, we affirm.

## DISPOSITION

The jury was not manifestly erroneous in its conclusions, and for this reason, we affirm the judgment of the trial court.

**AFFIRMED.**

5