# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-143


**JESSICA ALLEMAN MAGNON**

**VERSUS**

**JEREMIAH MAGNON**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20144742
HONORABLE CHARLES G. FITZGERALD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JONATHAN W. PERRY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, John E. Conery, and Jonathan W. Perry, Judges.


**AFFIRMED.**

**Gabe A. Duhon**
**Attorney at Law**
**P. O. Box 478**
**105 Tivoli Street**
**Abbeville, LA 70511**
**(337) 893-3423**
**Counsel for Defendant/Appellant:**
    **Jeremiah Magnon**

**Richard D. Mere, Ltd.**
**701 Johnston Street**
**Lafayette, LA 70502-3301**
**(337) 269-5555**
**Counsel for Plaintiff/Appellee:**
    **Jessica Alleman Magnon**

**Keith Stutes**
**District Attorney, Fifteeenth Judicial District**
**Shane Michael Mouton**
**Special Assistant District Attorney**
**Post Office Box 2609**
**Lafayette, LA 70502-2609**
**(337) 235-0751**
**Counsel for Plaintiff/Appellee:**
    **Jessica Alleman Magnon**

**PERRY, Judge.**

In this case the defendant-father appeals the trial court's computation of his child support obligation. We affirm.

### FACTS AND PROCEDURAL HISTORY

Jeremiah Magnon (hereafter "Jeremiah") and Jessica Alleman Magnon (hereafter "Jessica") were married on August 10, 2002. Two children were born of the marriage, A.M. born on August 30, 2002, and R.M. born on November 16, 2005. Subsequently, in 2014, Jessica sought a divorce as provided in La.Civ.Code art. 102 and initiated proceedings to determine the parents' child support obligations. By judgment dated November 26, 2015, the parties were granted joint custody of the minor children with Jessica designated as the domiciliary parent; at that time, the trial court set Jeremiah's monthly child support at $1,977.73, retroactive to September 16, 2014.

Thereafter, on April 1, 2016, Jeremiah, the owner and sole member of Imperial Consulting, LLC,[1] filed a motion to reduce child support. On January 20, 2017, during a hearing officer conference, child support was re-set at $838.90 per month retroactive to April 1, 2016. Subsequent thereto, both parties objected to the hearing officer's child support determination, and this matter proceeded to the trial court for adjudication. After numerous hearings and ongoing discovery disputes,[2]

---

[1] Imperial Consulting specializes in security, safety, narcotic detection, canine detection, security site safety, and environmental reconstruction.

[2] By judgment dated August 10, 2017, Imperial Consulting was ordered to provide its records to Jessica; on April 30, 2018, the hearing officer recommended that Jeremiah be found in contempt for his failure to deliver the QuickBooks data as requested in prior discovery and ordered to be produced via a motion to compel; on August 8, 2018, the trial court entered judgment against Jeremiah concerning contempt for failure to provide discovery, i.e., QuickBooks, depreciation schedules for Imperial Consulting for 2015, 2016, and 2017, and Imperial Consulting's full tax returns for 2017; another judgment was entered on November 7, 2018, finding Jeremiah in contempt of court and sentenced to jail unless he provide the accountant's copy of QuickBooks, along with passwords, to Jessica; and on February 27, 2019, trial was continued for the issuance of additional interrogatories.

including five motions to compel Jeremiah to provide accurate information concerning his income and expenses, the trial court conducted a trial on July 8, 2019, more than three years after Jeremiah filed his motion to reduce. At that time, the trial court heard from various witnesses, including two financial expert witnesses, Glenn A. Thibodeaux (hereafter "Mr. Thibodeaux") for Jeremiah and Rick L. Stutes (hereafter "Mr. Stutes") for Jessica, who provided testimony regarding the determination of Jeremiah's monthly gross income. After finding Jeremiah proved a material change in circumstances, in its final judgment dated July 10, 2019, the trial court set Jeremiah's monthly child support at $1,419.86, with arrearages set at $22,657.44, [3] and costs payable to Jessica's expert in the sum of $8,000.00. Thereafter, on August 29, 2019, Jeremiah was granted a devolutive appeal.[4]

In his sole assignment of error, Jeremiah contends that the trial court legally erred in incorrectly imputing certain business expenses for child support for the years 2016, 2017, and 2018.[5]

## DISCUSSION

Louisiana Civil Code Article 141 provides explicit authorization for courts to make child support awards in connection with divorce actions. Likewise, La.Civ.Code art. 142 provides that "[a]n award of child support may be modified if

---

[3] The trial court ordered Jeremiah to pay $500.00 per month for the arrearages. It also credited Jeremiah in the amount of $32,770.10 for 38 months of payments in accordance with the prior child support obligation of $838.90 set by the hearing officer.

[4] This court issued an additional briefing notice to the Office of the District Attorney, Fifteenth Judicial District, Non-Support Division. After the trial court adjudicated Jeremiah's child support obligation, the Non-Support Division filed a "Notice about Redirection of Child Support Payments" and a "Certification of Receipt of Support Enforcement Services." Pursuant to our briefing notice, the Non-Support Division has filed a brief supporting the trial court's adjudication of Jeremiah's child support obligation. In its brief, the Non-Support Division has advised us that it has suspended its non-support activities until this matter is finalized in this court.

[5] The following issues are not raised on appeal: the retroactivity of the child support award; the income of Jessica; the gross earnings of Jeremiah's business; and the court-ordered payment to Jessica's certified public accountant, the expert witness who testified on Jessica's behalf.

the circumstances of the child or of either parent materially change[.]" "The material change in circumstances must be substantial and continuing since the last award for support." La.R.S. 9:311(A).

Louisiana's uniform child support guidelines were enacted to provide adequacy and consistency in child support awards. *Lea v. Sanders*, 04-762, 04-1122 (La.App. 3 Cir. 12/22/04), 890 So.2d 764, *writ denied*, 05-183 (La. 3/24/05), 896 So.2d 1046. The trial court is granted great deference in fixing a child support award, and its determination of a parent's gross monthly income and his/her credibility is subject to a manifest error review. *Hagan v. Hagan,* 10–1432 (La.App. 3 Cir. 7/27/11), 70 So.3d 1081; *State, Dep't of Soc. Servs. v. Swords,* 08–580 (La.App. 3 Cir. 11/5/08), 996 So.2d 1267.[6]

Gross income is defined in La.R.S. 9:315(C)(3) (emphasis added) as:

(a) The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, recurring monetary gifts, annuities, capital gains, social security benefits, workers' compensation benefits, basic and variable allowances for housing and subsistence from military pay and benefits, unemployment insurance benefits, disaster unemployment assistance received from the United States Department of labor, disability insurance benefits, and spousal support received from a preexisting spousal support obligation;

(b) Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses. Such payment[s] include but are not limited to a company care, free housing, or reimbursed meals; and

(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or partnership or closely held corporation. **"Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for**

---

[6] Louisiana Revised Statutes 9:315.1.1(3) pertains to evidence allowed to support the determination of income and allows for "[t]he standard of living and assets of the obligor both prior and subsequent to the establishment of a child support order, to establish the actual income if the amount claimed is inconsistent with his lifestyle." Jessica presented no evidence in this regard and the trial court made no reference to this provision in its reasons for judgment.

3

**the accelerated component of depreciation expenses of investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.**

In *Baggett v. Baggett*, 96-453, p. 9 (La.App. 3 Cir. 4/23/97), 693 So.2d 264, 269, this court applied La.R.S. 9:315(C)(3) to a business situation[7] where someone owns their own company:

> [O]ne cannot avoid all or part of his obligations by exercising his exclusive control over a corporation wholly owned by him to limit his own salary. *Moncus v. Moncus,* 510 So.2d 1271 (La.App. 3 Cir.), *writ denied,* 514 So.2d 462 (La.1987).
>
> The definition of "gross income" for purposes of child support is far different from the standard used in calculating taxable income by the Internal Revenue Service. We initially note that for owners of closely held corporations, income is not calculated by adding together the value of benefits received with the owner's salary[.] The owner of a closely held corporation is more than an ordinary employee. He has unlimited access to the corporate accounts and has complete control over corporate policy. Because closely held corporations present the opportunity for underestimating the value of the benefits received, 9:315[C](4) effectively disregards the corporate entity and provides that revenues of the corporation will be treated as revenues of its owner. It further provides that only expenses *required to produce income* are to be deducted from *gross receipts* in calculating gross income. Also, "any other business expenses determined by the court to be inappropriate" will be disallowed. *Campbell v. Campbell,* 95–1711 (La.App. 1 Cir. 10/10/96); 682 So.2d 312; *Roberts v. Roberts,* [95-1626 (La.App. 4 Cir. 5/5/96),] 677 So.2d 1042.

To facilitate the determination of actual income in child support cases when one of the parties is receiving benefits from a business in which he has an ownership interest and the other party alleges that the income of the obligor is being "concealed or underreported," the trial court "shall admit evidence relevant to establishing the actual income of the party[.]" La.R.S. 9:315.1.1. The trial court has broad discretion in determining which figures are appropriate to use when calculating a parent's monthly gross income. *Hagan,* 70 So.3d 1081. Moreover, "[t]he party seeking to

---

[7] Although *Baggett*, 693 So.2d 264, involved a closely held corporation, we find the principles recognized therein, at least as regards the application of La.R.S. 9:315(C)(3), are equally applicable to Jeremiah's business structure.

4

reduce his income by including ordinary and necessary expenses bears the burden of proving that the expenses were ordinary and necessary of the production of income." *Bell v. Jackson*, 18-1075, p. 5 (La.App. 1 Cir. 5/31/19), 278 So.3d 382, 386; *see also Lavigne v. James*, 15-19 (La.App. 5 Cir. 5/14/15), 170 So.3d 1163 (citing *Dejoie v. Guidry*, 10-1542 (La.App. 4 Cir. 7/13/11), 71 So.3d 1111, *writ denied*, 11-1779 (La. 9/2/11), 68 So.3d 520).

The trial court determined Jeremiah's gross income, as that term is defined by La.R.S. 9:315(C)((3), by examining the financial records of Imperial Consulting and reviewing all expenses to determine if they met the criteria set out in *Baggett*.

However, Jeremiah argues that the trial court erred when it rejected the testimony of Mr. Thibodeaux, his financial expert, that there was no underreporting of "gross income" for the years 2016, 2017, and 2018. Jeremiah contends that not only did Mr. Thibodeaux consider the QuickBooks data file displaying income deposited and expenses paid, but his expert accountant also satisfied his validity concerns with verbal evidence from Jeremiah and receipts Jeremiah provided, at least in part.

Initially, Jeremiah contends the trial court erred when it excluded accelerated depreciation and compensation paid to officers. We disagree. With regards to the exclusion of accelerated depreciation, the trial court astutely rejected that argument. That determination is fully supported by La.R.S. 9:315(C)(3)(c) which specifically provides that ordinary and necessary expenses "shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses[.]" Likewise, as to officer compensation the trial court duly noted it would make no sense to exclude such an item from the determination of gross income because Jeremiah is the sole officer in this C corporation; as such, Jeremiah's

5

compensation is by definition an element of gross income to be considered in the determination of his child support obligation.

Next, regarding his 2017 and 2018 tax returns, Jeremiah contends that the trial court erroneously excluded rent deductions and improperly reduced "Other Deductions" while only considering 50% of the automobile and truck expense deduction. As to his 2016 tax returns, Jeremiah raises like objections.

From the outset, we recall that this case involves Jeremiah's sole ownership of a C corporation. We are further reminded that the trial court noted that almost three years passed between the filing of Jeremiah's motion to reduce child support and the trial of this matter. The trial court attributed this delay to the complexity in calculating gross income because Jeremiah owns his own company. Yet further, we point out that in addition to Jeremiah's testimony, the trial court heard conflicting expert testimony of Mr. Thibodeaux and Mr. Stutes on the question of Jeremiah's "gross income" as defined in La.R.S. 9:315(C)(3).

In *Veroline v. Priority One EMS*, 13-865, pp. 2-3 (La.App. 3 Cir. 2/12/14), 153 So.3d 1050, 1052, this court stated:

> "[W]here two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." [*Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880, 883 (La.1993)]. *See Darbonne v. Wal–Mart Stores, Inc.*, 00–551 (La.App. 3 Cir. 11/2/00), 774 So.2d 1022. Additionally, "When the district court has permitted both parties to present their experts before making its factual determinations, the fact finder's choice of alternative permissible views cannot be considered to be manifestly erroneous or clearly wrong." *Houssiere v. ASCO USA*, 12–791, p. 12 (La.App. 3 Cir. 1/16/13), 108 So.3d 797, 805–6 (*quoting Dumesnil v. Sw. La. Elec. Membership Corp.*, 08–982, p. 6 (La.App. 3 Cir. 2/4/09), 2 So.3d 1254, 1258), *writ denied*, 13–694 (La.5/17/13), 118 So.3d 377. Furthermore, "[w]here the testimony of expert witnesses differ, it is for the trier of fact to determine the most credible evidence and a finding of fact in this regard will not be overturned absent manifest error." *Smith v. Cappaert Manufactured Hous., Inc.*, 11–1464, p. 11 (La.App. 3 Cir. 4/10/12), 89 So.3d 1234, 1242–3 (*quoting Opelousas Prod. Credit Ass'n v. B.B. & H., Inc.*, 587 So.2d 812, 814 (La.App. 3 Cir.1991)), *writs denied*, 12–1418 (La.10/8/12), 98 So.3d 857 *and* 12–1516 (La.10/12/12), 98 So.3d

6

871. *See also Revel v. Snow*, 95–462 (La.App. 3 Cir. 11/2/95), 664 So.2d 655, *writ denied*, 95–2820 (La.2/2/96), 666 So.2d 1084. "The only time [the trial court's decision to accept the opinion of one expert and to reject that of another] will be deemed manifestly erroneous is when the court was clearly wrong in accepting the expert's opinion on which it relied." *Tullis v. Rapides Parish Police Jury*, 95–905, p. 8 (La.App. 3 Cir. 1/17/96), 670 So.2d 245, 250.

In the present case, the trial court provided thirty plus pages of well-expressed reasons for judgment. We note, too, that in its reasons for judgment the trial court specifically stated that it did not blindly accept one expert's opinion over the other; rather, it parsed each expert's opinion and fashioned its own resolution of the factual issue before it.

Unlike Jeremiah's assertion that his testimony and his expert's opinion should alone have been relied upon, we observe that Jeremiah's assertion fails to take into one critical role of the trial court—namely, its responsibility to determine the facts after judging the credibility of the parties and how that credibility determination affects the facts asserted.

In the present case, the trial court's oral reasons speak volumes about Jeremiah's credibility. At the very beginning of its resolution of the sole factual issue before it, the trial court noted, "It's impossible and I mean it is impossible to determine which . . . of the expenses are personal and which are company expenses in this case." The trial court explained that the basis for this observation was that Jeremiah was "using his company credit card, his company bank account as his own personal bank account[.]"

Later, when the trial court addressed the "other deductions" schedule on Jeremiah's corporate tax return, it stated with reference to its 50% reduction of automobile and truck expenses that the evidence simply did not preponderate in Jeremiah's favor. As the trial court stated, "The testimony is confusing, it's

7

convoluted, in a lot of respects it's simply just unbelievable." With regards to its rejection of rental expenses, the trial court stated:

> [T]hese are rents paid by your company to you on properties, again, three properties, where you live, where the server is, whether the server can be used for your own personal usage, all of that. It doesn't make any sense. The testimony, none of it, it is as convoluted as I've ever heard. All the rents those are excluded, they are not deducted for purposes of me calculating child support for your gross monthly income.

When findings of fact are based upon evaluations of witness credibility, the manifest error/clearly wrong standard demands great deference to the trial court. Only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Rosell v. ESCO,* 549 So.2d 890 (La.1989)*; Herron v. State Farm Mut. Auto. Ins. Co.*, 19-236 (La.App. 3 Cir. 12/30/19), 288 So.3d 859, *writ denied*, 20-191 (La. 4/27/20), 295 So.3d 948.

After reviewing this record in light of the law and the trial court's factual determinations, we find the trial court fully explained its resolution of this convoluted and confusing evidence, fully examining the expert testimony as well as assessing Jeremiah's credibility. Accordingly, we find the trial court's determination of Jeremiah's child support obligation was fully supported by the record and was neither manifestly erroneous nor clearly wrong.

For the foregoing reasons, we affirm the trial court's judgment. Costs of this appeal are assessed to Jeremiah Magnon.

**AFFIRMED.**