# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-1045


**METRO ELECTRIC & MAINTENANCE, INC.**

**VERSUS**

**BANK ONE CORPORATION AND JANECE RISER**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2003-4267
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*


## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*


Court composed of Oswald A. Decuir, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.

### AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

**Wayne Allen Shullaw**
**Attorney at Law**
**P. O. Box 4815**
**Lafayette, LA 70502-2310**
**(337) 266-2310**
**Counsel for Defendant-Appellant:**
 **JPMorgan Chase Bank, NA**

**Chris Paul Villemarette**
**Hawkins & Villemarette**
**102 Asma Blvd-Saloom III, #110**
**Lafayette, LA 70508**
**(337) 233-8005**
**Counsel for Plaintiff-Appellee:**
 **Metro Electric & Maintenance, Inc.**

**J. Quentin Simon**
**Attorney at Law**
**P. O. Drawer 52851**
**Lafayette, LA 70505-2851**
**(337) 235-3200**
**Counsel for Plaintiff-Appellee:**
 **Metro Electric & Maintenance, Inc.**

**Pickett, Judge.**

The appellant, JP Morgan Chase Bank[1], appeals the judgment of the trial court finding it liable for failing to prevent the theft perpetrated by Janece Riser.

### STATEMENT OF THE CASE

Charles Riser owns and operates two corporations, Metro Electric & Maintenance, Inc., (Metro Electric) and Computer Power & Technology, Inc. (Computer Power). While both were on-going concerns at all relevant times, Metro Electric had customers and current accounts receivables and Computer Power had no customers and limited accounts receivables. Mr. Riser's daughter, Janece Riser, was the office manager and bookkeeper for both companies. Ms. Riser's duties included documenting accounts receivables as they came in and depositing them into Metro Electric's account at Bank One. Computer Power also had a checking account with Bank One, but there was little activity with the account, since it had no customers and no employees, though some bills, like the telephone bill, were paid through Computer Power's account, and some checks that were written to Computer Power were deposited into the account. Ms. Riser also reconciled bank statements.

In March 2001, Ms. Riser began embezzling funds from the Computer Power account by writing a $500.00 check to herself and forging her father's signature on the check. Ms. Riser continued to write herself checks until she depleted the funds in the account. Beginning on October 4, 2001, Ms. Riser deposited checks made payable to Metro Electric into the Computer Power account at Bank One. The payee on these checks is clearly Metro Electric. The indorsements on the back of the checks vary. Some have "For Deposit Only" and Computer Power's account number, some

---

[1]JP Morgan Chase Bank, N.A., is the successor in interest to Bank One, the named defendant.

only the account number, and some include the initials "C.P.T." or the words "Computer Power Tech." Some checks have no indorsement at all. Some checks have the indorsement "Payable to Computer Power Tech / Metro Electric" and either the account number or the forged signature of Charles Riser. Some checks have the indorsement "For Deposit Only / CPT / Metro Electric" followed by the account number and the forged signature of Charles Riser.

Ms. Riser continued depositing checks payable to Metro Electric into Computer Power's account and writing herself checks from the Computer Power account until May 2003. In total, she wrote herself forged checks in the amount of $124,219.24. The total amount of the Metro Electric checks deposited into the Computer Power account was $125,023.33. In May 2003, Ms. Riser was out of the office on vacation and Mr. Riser was picking up the mail from the post office. He discovered an NSF notice from Bank One on the Computer Power account. When he contacted the bank, he discovered that Ms. Riser had been embezzling funds from the Computer Power account and depositing checks payable to Metro Electric in the Computer Power account.

On August 12, 2003, Metro Electric filed this suit against Bank One and Janece Riser alleging that Bank One was negligent in allowing Ms. Riser to deposit checks made payable to Metro Electric into Computer Power's account. Metro Electric claimed it suffered damages in the amount of $124,219.24, the total amount of the checks Ms. Riser stole. Bank One answered and filed a cross claim against Ms. Riser. Ms. Riser never answered the suit, and a default judgment was entered against her and in favor of Metro Electric and JP Morgan Chase Bank, N.A. (Chase), who by this

2

time had been substituted as the defendant. Following a trial, the trial court found in

favor of Metro Electric and against Chase for $124,219.24. Chase now appeals.

## ASSIGNMENTS OF ERROR

The appellant, JP Morgan Chase Bank, N.A., asserts two assignments of error:

1.    The trial court erred in failing to rule on Chase Bank's Exception of
      Prescription.

2.    The trial court erred in failing to apply the applicable law to the non-
      prescribed portion of Metro Electric's claim.

## DISCUSSION

The first issue that must be determined is what law to apply. Chase argues that

the actions of Janece Riser constitute a conversion pursuant to La.R.S. 10:3-420. We

agree. Louisiana Revised Statutes 10:3-420 states:

(a) An instrument is converted when

        (i) a drawee to whom it is delivered for acceptance
refuses to return it on demand; or

        (ii) any person to whom it is delivered for payment
refuses on demand either to pay or to return it; or

        (iii) it is taken by transfer, other than a negotiation,
from a person not entitled to enforce the instrument or a
bank makes or obtains payment with respect to the
instrument for a person not entitled to enforce the
instrument or receive payment.

(b) An action for conversion of an instrument may not be brought
by (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee
who did not receive delivery of the instrument either directly or through
delivery to an agent or co-payee or (iii) by the drawer.

(c) In an action under Subsection (a), the measure of liability is
presumed to be the amount payable on the instrument, but recovery may
not exceed the amount of the plaintiff's interest in the instrument.

(d) A representative other than a depositary bank, who has in
good faith dealt with an instrument or its proceeds on behalf of one who
was not the person entitled to enforce the instrument is not liable in

3

conversion to that person beyond the amount of any proceeds that it has not paid out.

(e) Nothing in this Section prevents the owner of an instrument that has been wrongfully taken from him and not negotiated from requiring the drawer or maker to issue a substitute for it.

(f) Any action for conversion or an action for replacement under Subsection (e) prescribes in one year.

The applicable section in this case is section (a)(iii). Under the relevant portions of the section, there is a conversion if a bank "obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." In this case, Bank One obtained payment with respect to instruments payable to Metro Electric for Computer Power, who was neither entitled to enforce the instrument nor to receive payment on the instrument.

Metro Electric would have us find that this was not a conversion, but that "Bank One simply deposited the money into the wrong account." This reasoning ignores how the checks were deposited into the Computer Power account. This was not a case of the bank accidentally diverting funds from one account to another through a clerical error. Bank One accepted checks clearly payable to Metro Electric for deposit into the Computer Power account without requiring any indorsement making the checks payable to Computer Power. This constitutes a conversion pursuant to La.R.S. 10:3-420(a)(iii), and pursuant to section (f) of the statute, a one-year prescriptive period applies.

When an exception of prescription has been filed, the party pleading exception bears the burden of proving sufficient facts to support the claim. *Lima v. Schmidt*, 595 So.2d 624 (La.1992). If, however, the face of the pleadings make evident that the cause of action has prescribed, the burden shifts to the plaintiff to show that the

4

action has not prescribed. *Younger v. Marshall Ind., Inc.*, 618 So.2d 866 (La.1993). The petition in this case was filed on August 12, 2003. Since we have determined that the proper prescriptive period for the claims of Metro Electric is one year, any deposits of Metro Electric checks into the account of Computer Power made before August 12, 2002, have prescribed unless Metro Electric can prove that prescription was interrupted or suspended.

Metro Electric asserts four different arguments on appeal to support its contention that prescription has not run. First, it argues that Rule 9.8 of the Uniform Rules for District Courts requires that exceptions and motions be accompanied by a proposed order setting a hearing date or an unopposed order referring the exception to the trial on the merits. We note that Rule 9.8 states that the court "may strike" the exception or may refer it to the merits, thus the rule is permissive and not mandatory. There is no evidence in the record that the trial court did strike the exception. Furthermore, at the time of closing arguments, after counsel for Chase presented the argument that the claim had prescribed, the trial court offered counsel for Metro Electric an opportunity to counter the argument. The trial court clearly considered the exception of prescription to be before the court at the time of trial. The trial court's failure to rule on a demand raised by the pleadings is deemed a rejection of the demand. *Sun Finance Co., Inc. v. Jackson*, 525 So.2d 532 (La.1988). Thus, the trial court's failure to rule on the exception of prescription in either its oral reasons or written judgment does not mean the exception was not properly before the court, but that the exception was overruled.

Metro Electric's second argument on the issue of prescription, that this case is governed by a five-year prescriptive period, lacks merit, as we have already found that the one-year period for actions under La.R.S. 10:3-420 applies.

Metro Electric's argument that the doctrine of *contra non valentem* applies is likewise without merit. The supreme court discussed the doctrine of *contra non valentem* in *Wimberly v. Gatch*, 93-2361, pp. 8-9 (La. 4/11/94), 635 So.2d 206, 211 [citations omitted]:

> The courts created the doctrine of *contra non valentem*, as an exception to the general rules of prescription. The doctrine is contrary to the express provisions of the Civil Code. The principles of equity and justice which form the mainstay of the doctrine, however, demand that under certain circumstances, prescription be suspended because plaintiff was effectually prevented from enforcing his rights for reasons external to his own will.
>
> Generally, the doctrine of *contra non valentem* suspends prescription where the circumstances of the case fall into one of the following four categories:
>
> 1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> 2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> 3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
>
> 4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

Metro Electric asserts only that the fourth category applies to its situation. It claims that even if Mr. Riser would have examined the bank statements of Metro Electric, he would not have discovered the forgery. This argument ignores the fact

that had Mr. Riser merely glanced at the bank statement of Computer Power at anytime after May 2001, he would have determined that there was far more activity than usual in that account, in terms of both deposits and checks written on the account. We find that the doctrine of *contra non valentem* does not apply in this case.

Finally, Metro Electric asserts that the actions of Bank One constituted a continuing tort, and thus prescription did not begin to run. This argument lacks merit. Each deposit by Ms. Riser of Metro Electric checks into Computer Power's account, and Bank One's subsequent seeking of payment for Computer Power, constituted a separate conversion with separate damages. There is neither a continuous action on the part of Bank One nor a continuous damage suffered by Metro Electric, both of which are necessary to find a continuing tort. *See Ready v. State*, 95-1564 (La.App. 3 Cir. 6/25/97), 707 So.2d 1250.

As we reject Metro Electric's arguments regarding prescription, we find the trial court made an error of law in failing to apply the one-year prescriptive period. We must now review the record to determine the effect of applying the one-year prescription period. We note that from the beginning of this case, the parties have used as the measure of damages the amount of the checks that Ms. Riser wrote to herself from the Computer Power account, or $124,219.24. As between Metro Electric and Bank One, the real measure of damages should be the amount of the checks payable to Metro Electric that were deposited into the Computer Power account, or $125,023.33, as this amount represents the amount of Metro Electric's funds which were converted. Essentially, Metro Electric's loss occurred when checks made payable to it were deposited into Computer Power's account, not when Ms. Riser subsequently stole the improperly deposited money from the Computer Power

7

account. This distinction is important as we determine the portion of the claim that has prescribed.

All claims for funds converted prior to August 12, 2002, have prescribed. Our review of the record indicates that in August of that year the only deposit of a Metro Electric check into Computer Power's account was made on August 6, 2002. Thus, we will calculate the total amount of Metro Electric's loss by adding the amounts of all Metro Electric checks deposited into Computer Power's account beginning with the September 2002 bank statement. Having made that calculation, we find the damages suffered by Metro Electric on the portion of the claim that has not prescribed is $62,336.18.

Chase's second assignment of error asserts that the trial court failed to apply the correct law to further reduce Chase's liability to Metro Electric. First, Chase claims that La.R.S. 10-3:405 applies to Metro Electric's claims and acts to bar the non-prescribed portion of the claim. Louisiana Revised Statutes 10:3-405 states:

> (a) In this Section:
>
> (1) "Employee" includes an independent contractor and employee of an independent contractor retained by the employer.
>
> (2) "Fraudulent indorsement" means (i) in the case of an instrument payable to the employer, a forged indorsement purporting to be that of the employer, or (ii) in the case of an instrument with respect to which the employer is the issuer, a forged indorsement purporting to be that of the person identified as payee.
>
> (3) "Responsibility" with respect to instruments means authority (i) to sign or indorse instruments on behalf of the employer, (ii) to process instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition, (iii) to prepare or process instruments for issue in the name of the employer, (iv) to supply information determining the names or addresses of

8

payees of instruments to be issued in the name of the employer, (v) to control the disposition of instruments to be issued in the name of the employer, or (vi) to act otherwise with respect to instruments in a responsible capacity. "Responsibility" does not include authority that merely allows an employee to have access to instruments or blank or incomplete instrument forms that are being stored or transported or are part of incoming or outgoing mail, or similar access.

(b) For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

(c) Under Subsection (b), an indorsement is made in the name of the person to whom an instrument is payable if (i) it is made in a name substantially similar to the name of that person or (ii) the instrument, whether or not indorsed, is deposited in a depositary bank to an account in a name substantially similar to the name of that person.

We find this statute inapplicable because there is no "forged indorsement" as defined by the section (a)(2) on the instruments in question. In fact, there is no indorsement at all on the instruments that were deposited after August 12, 2002, as that term is defined at La.R.S. 10:3-204.

Chase further argues that the trial court should have decreased the award to Metro Electric by allocating some portion of the fault to Metro Electric. Louisiana Civil Code article 2323 states:

A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and

9

regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

While La.R.S. 10:3-405 does not apply, we find the trial court erred in failing to apportion some fault to Metro Electric pursuant to La.Civ.Code art. 2323. The clear language of section B of Article 2323 applies the provisions of the article to any claim, and we find no prohibition to the application of this article to these facts. Bank One clearly was negligent in failing to notice that the checks Ms. Riser deposited to Computer Power's account were made payable to Metro Electric, and lacked any indorsement that would transfer them to Computer Power. We also find that Mr. Riser was negligent. While Metro Electric asserts that it could have done nothing to discover Ms. Riser's embezzlement scheme sooner, this argument ignores the fact that Mr. Riser, its sole owner and president, was also sole owner and president of Computer Power. Had he only looked at a Computer Power bank statement anytime after May 2001, he would have discovered that there were more checks being written than for a telephone bill and to the Department of Revenue. Had he looked at a statement after October 2001, in addition to excessive withdrawals, he would have found that there was unauthorized activity in that account, from which only checks

10

to the telephone company and the Department of Revenue should have been written. In four separate months, the statements indicate over $13,000.00 in deposits, which Mr. Riser would have known were high for a company Metro Electric's brief describes as "dormant." We find that it is appropriate to allocate 50% of the fault to Metro Electric. As an intentional tortfeasor, we note that we need not reduce the award for the fault of Ms. Riser. *See* La.Civ.Code art. 2323(C).

## CONCLUSION

We reverse the trial court's judgment in favor of Metro Electric against JP Morgan Chase Bank, N.A., and find the appropriate amount of damages is $62,336.18. We further reduce the award by 50% to account for Metro Electric's fault. We find JP Morgan Chase is liable to Metro Electric for $31,168.09 plus legal interest from the date of judicial demand. We cast Metro Electric with the costs of this appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**