STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1374

DR. RICK LACOMBE

VERSUS

BANK ONE CORP. D/B/A BANK ONE, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2004-0904
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED AS AMENDED.**

Wayne A. Shullaw
Attorney at Law
P. O. Box 4815
Lafayette, LA 70502-4185
Counsel for Defendant/Appellant:
    JP Morgan Chase Bank, N.A.
    (Successor in Interest to Bank One, N.A.)

Lisa C. McCowen
Jeansonne & Remondet
P. O. Box 91530
Lafayette, LA 70509-1530
Counsel for Plaintiff/Appellee:
    Dr. Rick LaCombe

**Pickett, Judge.**

The defendant, JP Morgan Chase Bank, N.A. (successor in interest to Bank One and hereinafter referred to simply as "the Bank"), appeals a judgment of the trial court in favor of the plaintiff, Dr. Rick LaCombe, in the amount of $63,855.79 plus interest from the date of judicial demand, plus costs and experts fees. The judgment was rendered subject to a proportional credit of $8,870.84 already paid by third-party defendant, Lana Slyfield. Dr. LaCombe answered the appeal seeking an additional $5,911.62 in damages and expenses and attorney's fees denied by the trial court in connection with the Bank's denial of Requests for Admissions. We amend and affirm as amended the judgment of the trial court.

## FACTS

At the time of the incident at issue Dr. Rick LaCombe, an optometrist, was practicing optometry as a sole proprietorship and doing business as LaCombe Eye Center. His business took in checks for services and products made out in various ways: Dr. Rick LaCombe, Rick LaCombe, O.D., Rick LaCombe, M.D., Rick LaCombe, and LaCombe Eye Center (referred to collectively as Dr. LaCombe).

Lana Slyfield was hired by the plaintiff on April 15, 1998, as his receptionist. In time, she worked her way up to the position of business director, a position she held at the time she was terminated on March 3, 2003. As "business director" she was the individual in charge at the front desk. LaCombe Eye Center had both an office manager and a bookkeeper. Ms. Slyfield's duties did not include any accounting or bookkeeping duties. Beginning in 1999, Ms. Slyfield started embezzling from Dr. LaCombe by stealing checks from the mail. She did this by simply placing her account number under forged endorsements on the checks and

1

depositing the checks into her account at Bank One. Between 1999 and March 2003, Ms. Slyfield misdirected 532 checks, totaling $69,767.41. We note that Dr. LaCombe did not maintain an account at Bank One. On some checks Ms. Slyfield added Dr. Lacombe's initials as part of her forged endorsement stating that Dr. LaCombe's signature "didn't really look like a signature, so I guess that it would make it look like it more of a signature." On others, she simply inscribed "For Deposit Only," followed by her account number. Ms. Slyfield testified that no employee of the Bank ever questioned her regarding her depositing checks made payable to Dr. LaCombe into her personal account.

Ms. Slyfield was terminated on March 3, 2003, for reasons unrelated to her embezzlement. It was when Dr. and Mrs. LaCombe were going over things in Ms. Slyfield's area of responsibility, in preparation of hiring a new employee, that they found some discrepancies. Further investigation revealed Ms. Slyfield's embezzlement.

## LAW AND DISCUSSION

The Bank raises three issues on appeal: 1)the trial court erred in dismissing the Bank's exception of prescription on a number of checks; 2)the trial court erred in granting recovery to Dr. LaCombe on several checks made out to a third party; and 3) the trial court erred in finding the Bank 100% at fault in accepting the forged checks for deposit and negotiation.

The trial court dismissed the Bank's exception of prescription, relying on the doctrine of *contra non valentem non currit praescriptio*. The Bank argues that the trial court erred and that this court should follow its ruling in *Metro Electric & Maintenance, Inc. v. Bank One, Corp.*, 05-1045 (La.App. 3 Cir. 3/1/06), 924 So.2d

446, and sustain the Bank's exception.  However, the Bank's argument fails to recognize that the doctrine of *contra non valentem* is applied on a case-by-case basis based upon circumstances.  In *Metro Electric* we found that the mere inspection of the plaintiff's bank statement would have uncovered the embezzlement.  Such is not the case here.  The most recent detailed discussion of the doctrine of *contra non valentem* by the Louisiana Supreme Court can be found in *Carter v. Haygood*, 04-646 (La. 1/19/05), 892 So.2d 1261 wherein the court stated the following:

> At the outset, we observe that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished;  thus, of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted. *Foster v. Breaux*, 263 La. 1112, 270 So.2d 526, 529 (1972); *Knecht v. Board of Trustees for Colleges and Universities*, 525 So.2d 250, 251 (La.App. 1st Cir.), *writ denied*, 530 So.2d 87 (La.1988).  To soften the occasional harshness of prescriptive statutes, our courts have recognized a jurisprudential exception to prescription: *contra non valentem non currit praescriptio*, which means that prescription does not run against a person who could not bring his suit. *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La.1992); *see also, Plaquemines Parish Com'n Council v. Delta Development Co., Inc.*, 502 So.2d 1034, 1054 (La.1987); *Cartwright v. Chrysler Corp.*, 255 La. 597, 232 So.2d 285, 287 (1970); R.O.M., Note, *Gover v. Bridges: Prescription—Applicability of Contra Non Valentem Doctrine to Medical Malpractice Actions*, 61 Tul.L.Rev. 1541, 1541 n. 1 (1986-1987).

> *Contra non valentem* is a Louisiana jurisprudential doctrine under which prescription may be suspended. *See* Frank L. Maraist and Thomas C. Galligan, *Louisiana Tort Law* § 10-4(b), 222 (1996); *see also*, R.O.M., *supra*.  Moreover, it is an equitable doctrine of Roman origin, with roots in both civil and common law, and is notably at odds with the public policy favoring certainty underlying the doctrine of prescription. *See Plaquemines Parish Com'n Council*, 502 So.2d at 1055; *see also*, R.O.M., *supra*.

> In *Plaquemines Parish Com'n Council v. Delta Development Co., Inc.*, 502 So.2d 1034, 1054-55 (La.1987), we recognized the four instances where *contra non valentem* is applied to prevent the running of prescription:  (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;  (2) where there was some condition coupled with the

3

contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. These categories thus allow "the courts to weigh the 'equitable nature of the circumstances in each individual case' to determine whether prescription will be tolled." R.O.M., *supra* at 1545.

*Id.* at 1268. In managing his business, Dr. LaCombe kept graphs of the progress of his practice and held weekly meetings where reports of the past week's activities were presented. Dr. LaCombe was given no reason to suspect that any wrong-doing was taking place. Neither the charts nor the reports raised any "red flags," the charts showing continued growth. Ms. Slyfield covered her illegal activity well, choosing checks that would not be easily missed. It was not until after Ms. Slyfield was fired on March 3, 2003 and Dr. and Mrs. LaCombe started going over things in Ms. Slyfield's area of responsibility, in preparation of hiring a new employee, that wrong-doing was discovered. Suit was brought within one year of the date Ms. Slyfield was fired.

Considering the facts in this case, we find the third category of *contra non valentem* is applicable and that the trial court was correct in applying the doctrine to the plaintiff's claim.

We next discuss the trial court's allocation of 100% of the fault in this case to the Bank. Louisiana Revised Statutes 10:3-406 provides as follows:

> (a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.
>
> (b) Under Subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the

4

person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

(c) Under Subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under Subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.

Whether the Bank and/or Dr. LaCombe failed to exercise ordinary care, whether either party was negligent, and whether this negligence substantially contributed to the making of the forged signatures on the checks at issue are findings of fact. *Gulf States Section, PGA, Inc. v. Whitney Nat'l Bank of New Orleans*, 96-0844 (La.App. 4 Cir. 2/12/97), 689 So.2d 638. As a reviewing court, it is our function to determine whether there is a factual basis of support for the trial court's factual findings or whether the trial court's factual findings are clearly wrong. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993).

We first look at any possible fault on the part of Dr. LaCombe. Each side called an expert witness, a Certified Public Accountant/Certified Valuation Analyst—Robert C. Veasey testified for the plaintiff and Allen Hebert for the defense. Mr. Veasey has been Dr. LaCombe's accountant since the 1980's. He set up the accounting system used by Dr. LaCombe. The summary of his testimony is that there is no accounting system that would totally eliminate the possibility of theft, that one sets up an accounting system based upon a cost-benefit analysis, and that Dr. LaCombe's accounting system was reasonable under the circumstances.

Mr. Hebert's testimony appeared to be based on hind-sight. He stated that Dr. LaCombe could have hired more employees and segregated their duties (i.e.- instituted additional internal controls), thereby reducing the opportunity for any one

employee to misdirect funds, or that Dr. LaCombe could have "out-sourced" his billing and collection functions to an independent firm.

Both of these "solutions" would probably have kept Ms. Slyfield from tapping the company coffer. However, considering the size of Dr. LaCombe's practice and applying a cost-benefit analysis, we find no error in the trial judge rejecting the Bank's expert's opinion that the lack of internal controls in the accounting system in Dr. LaCombe's office contributed to the "non-detection of the embezzlement scheme." Accordingly, we find Dr. LaCombe exercised "ordinary care" in the conduct of his practice and did not "substantially contribute" to the making of his forged signature on the checks in question.

In assessing the fault of the Bank, we take into account the Bank's failure to follow its own policies. Ms. Noy Kuy, an Assistant Banking Center Manager for the Bank, testified that the Bank recognized that a sole proprietorship was a form of business. She further stated that it was the Bank's policy that a check made out to a business, including a check made out to a sole proprietorship, had to be deposited into an account bearing the business's name. However, she stated that checks made out to Rick LaCombe, O.D., Dr. Rick LaCombe, or even Dr. Rick LaCombe d/b/a Lacombe Eye Center would be considered "personal" rather than "business" checks and handled accordingly. This appears to be in direct contravention of the Bank's own policies. Accordingly, we find the Bank failed to exercise ordinary care in taking the forged instruments and affirm the trial court's determination that the Bank was 100% at fault.

The last issue raised by the appellant and the answer to appeal filed by the appellee both question the amount of damages awarded by the trial court. The total

amount allowed or disallowed by the trial court was based upon the trial court's determination of whether a check or group of checks had been proven to belong to that group or class of checks which the Bank accepted in disregard of its own policies, i.e., if, in the opinion of the trial judge, the Bank had failed to exercise ordinary care in the handling of the check. This is a factual determination which must be reviewed under the manifest error standard of review.

In *Salvant v. State*, 05-2126, p. 5 (La. 7/6/06), 935 So.2d 646, 650 (footnote omitted), the supreme court reminded us of the following:

> Under the manifest error standard of review, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. *Smith v. Louisiana Dept. of Corrections*, 93-1305 (La.2/28/94), 633 So.2d 129, 132; *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993); *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirely and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Id.* The appellate court must not re-weigh the evidence or substitute its own factual findings because it would have decided the case differently. *Id.*; *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 (La.4/3/02), 816 So.2d 270, 278-79. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* However, where documents or objective evidence so contradict the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. *Rosell, supra* at 844-45. But where such factors are not present, and a fact finder's finding is based on its decision to credit the testimony of one or two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. *Id.*

In deciding for which of the 532 forged checks the Bank would be held responsible, the trial judge relied heavily on Plaintiff's Exhibit #12. This exhibit was prepared by Mrs. Penny LaCombe, Dr. LaCombe's wife, who had worked with her husband in the office almost every day since he started his practice. The exhibit

7

divided the 532 checks into four basic groups (which we will refer to as Groups A, B, C, & D) and subdivided the first and fourth group into sub-groups (which we will call A-1, A-2, A-3, D-1 & D-2).

Group A contains 385 checks totaling $50,888.77. These checks are payable to LaCombe Eye Center (LEC)(A-1); Dr. LaCombe, Rick LaCombe, d/b/a LEC(A-2); Dr. Rick LaCombe, Rick LaCombe, O.D., Rick LaCombe, M.D.(A-3); or some variation there of. Group A checks are not at issue. Group C is made up of two checks, totaling $143.77, payable to Marcus Andrepont, O.D. and make up the basis for the Bank's third issue. We agree with the Bank on this issue. The record fails to establish why Dr. LaCombe should be credited for these two checks. Accordingly, we amend the trial court's judgment to exclude the $143.77 represented by these checks.

In his answer to the Bank's appeal Dr. LaCombe seeks an additional $5,911.62 in damages. This amount represents the sum of the value of two groups of checks disallowed by the trial court, Group B and Group D-1. Group B is made up of seven checks, totaling $512.13, which the trial court described as "blank or unreadable." The trial court disallowed the $512.13 they represent based upon the lack of proof that they were intended for Dr. LaCombe. We find no error in this determination.

The checks in Group D-2 are not at issue. Group D-1 is made up of 49 checks, totaling $5,399.49, deposited singly and, although made payable to Rick J. LaCombe, bear no professional designation. The trial court disallowed the value represented by these checks. We find the trial court clearly erred in a portion of this ruling. Forty-one of these checks (representing $4,750.87) were from insurance companies, which should have raised a red flag to the teller accepting these check as to whether these

were personal or business checks. Of the remaining eight checks in this group, four checks (representing $284.48) were deposited with other insurance checks, which should have, likewise, raised a red flag. Accordingly, we amend the judgment of the trial court to increase the award by $5,035.35.

Finally, we address Dr. LaCombe's request for expenses and attorney's fees connected with the Bank's denial of certain Requests for Admissions. The trial court denied Dr. LaCombe's requests stating that the bank had admitted certain portions of the requests and that the portions denied formed a portion of the plaintiff's case which had to be argued at trial. We find no clear error in this ruling.

Accordingly, for the reasons stated above, the judgment of the trial court is amended to delete the $143.77 in checks made payable to Dr. Andrepont and amended to increase the award by $5,035.35 from Group D-1 checks. In all other respects the judgment of the trial court is affirmed, resulting in judgment in favor of Dr. Rick J. LaCombe in the amount of $68,747.37. Dr. LaCombe's answer to appeal is denied except as related to the checks in Group D-1 which we credited to Dr. LaCombe. Each party is to bear its own costs on appeal.

**AFFIRMED AS AMENDED.**