SOUTHERN CHIROPRACTIC AND SPORTS REHABILITATION CENTER, INC.
v.
KEN COLEMAN, D.C.
No. 2007 CA 1585.
Court of Appeal of Louisiana, First Circuit.
June 30, 2008.
Not Designated for Publication.
ANATOLE J. PLAISANCE, Attorney for Plaintiff-Appellant Southern Chiropractic and Sports Rehabilitation Center, Inc.
HENRY D.H. OLINDE, Jr., SCOTT E. MERCER, CARLETON, DUNLAP, OLINDE, MOORE, & BOHMAN, L.L.C., Attorneys for Defendant-Appellee Ken Coleman, D.C.
Before: PARRO, KUHN, AND DOWNING, JJ.
PARRO, J.
The plaintiff appeals from a judgment denying a motion for new trial and a judgment sustaining the defendant's peremptory exception raising the objection of prescription and dismissing all of its claims. For the following reasons, we affirm.

Factual and Procedural Background
On December 1, 2006, Southern Chiropractic and Sports Rehabilitation Center, Inc. (Southern) filed a suit against Ken Coleman (Coleman), a chiropractor, for money owed. In its petition, Southern alleged that while Coleman was employed by it from 2001 to 2005, he received, without authorization, more than $19,000 belonging to Southern related to treatment of patients, some of whom he secretly treated at Southern while on its payroll.
Coleman filed an exception raising the objection of prescription based on the one-year prescriptive period applicable to actions for conversion. In his memorandum in support of the exception, Coleman stated that he began working as a chiropractor for Southern in 2001 and that in September 2002 Southern ceased doing business. He further indicated that the personal injury attorneys who represented some of his patients sent final payments totaling $19,006.44 directly to him between August 2002 and October 2003, since they did not know where to send payments after Southern ceased doing business. He explained that because Southern owed him $48,000 when his employment ended, he initially placed this $19,006.44 into an escrow account, which was subsequently transferred into his attorney's client trust fund account for safe keeping "pending resolution of this dispute." According to Coleman, the subject of this suit was his alleged taking of money belonging to Southern. Because the suit for conversion of Southern's property was not filed within one year of Coleman's receipt of these payments, Coleman urged that Southern's claims had prescribed.
On the morning of the hearing on Coleman's exception, without having tiled an opposition, Southern amended its petition to add the following allegations:
5.
The defendant's action is a continuing tort because he is still holding funds that [belong] to the plaintiff.
6.
The defendant breached a contract he had with the plaintiff.
7.
The defendant has on [occasion] acknowledged that he, or his attorney[,] is holding plaintiff's funds.
8.
Defendant acknowledged, in February, 2007 that he [was] holding funds that plaintiff claims in these proceedings.
Both parties were represented by counsel at the hearing of this matter. Only that portion of the hearing transcript concerning oral reasons for judgment is included in the record. Nonetheless, the minute entry related to this hearing reflects that this matter was submitted following argument by counsel and the introduction of documentary evidence. After considering the evidence, pleadings, and argument of counsel, the trial court sustained Coleman's exception and dismissed all of Southern's claims against Coleman. Southern then filed a motion for new trial, which was denied. Southern appealed, urging that its suit is for breach of contract and, alternatively, that the rules of acknowledgment and/or continuous tort apply.

Discussion
Coleman correctly notes that Southern appealed from the judgment denying the motion for new trial, which is interlocutory, as opposed to the judgment that sustained his objection of prescription. Generally, where it is clear from the appellant's brief that the appellant intended to appeal a judgment on the merits, along with a judgment denying a motion for new trial, an appellate court will consider the appeal to be an appeal of the judgment on the merits even though the notice of appeal only refers to the judgment denying the motion for new trial. Rao v. Rao, 05-0059 (La. App. 1st Cir. 11/4/05), 927 So.2d 356, 360 n. 2, writ denied, 05-2453 (La. 3/24/06), 925 So.2d 1232. Furthermore, appeals are favored in the law. Fraternal Order of Police v. City of New Orleans, 02-1801 (La. 11/8/02), 831 So.2d 897, 899. Accordingly, we will consider this matter as though Southern intended to appeal from both the March 5, 2007 judgment sustaining the exception, as well as the April 24, 2007 judgment that denied its motion for new trial.[1]
Liberative prescription is a mode of barring of actions as a result of inaction for a period of time. LSA-C.C. art. 3447. Delictual or tort actions are subject to a liberative prescription of one year. LSA-C.C. art. 3492. The prescriptive period applicable to an action alleging breach of contract is ten years. Allen v. Carollo, 95-1840 (La. App. 1st Cir. 4/4/96), 674 So.2d 283, 286; see LSA-C.C. art. 3499. The nature of the duty breached determines whether the action is in tort or in contract. Roger v. Dufrene, 613 So.2d 947, 948 (La. 1993).
Coleman urged that Southern's action is grounded on his alleged unlawful interference with the ownership or possession of money belonging to Southern and is frequently termed an action for "conversion" in Louisiana. An act in derogation of the plaintiffs possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756, 760 (La. 1985).
Conversion is a tort and governed by the one-year prescriptive period. Madden v. Madden, 353 So.2d 1079, 1081 (La. App. 2nd Cir. 1977); see La. C.C. art. 3492. The prescriptive period commences on the date the aggrieved party has actual or constructive knowledge[2] of the facts indicating to a reasonable person that he is the victim of a tort. Jefferson v. Crowell, 42,177 (La. App. 2nd Cir. 5/9/07), 956 So.2d 746, 749.
According to the petition, the receivables in question at all times belonged to Southern. By withholding and refusing to surrender possession of these funds to Southern after demand, Coleman's interference with Southern's possessory rights became sufficiently serious to amount to conversion. See Louisiana State Bar Assn v. Hinrichs, 486 So.2d 116, 121 (La. 1986). Thus, the trial court properly characterized the nature of the original lawsuit as one for conversion. Southern's petition was filed on December 1, 2006, concerning money belonging to it that was allegedly received by Coleman in 2001, 2002, 2003, 2004, and 2005. Southern failed to allege any facts concerning the date on which it had actual or constructive knowledge of Coleman's receipt of any of the money or the date on which Coleman's possession of these funds became adverse to Southern. Accordingly, on the face of Southern's December 1, 2006 petition, any claim for conversion relating to funds received by Coleman prior to December 1, 2005, has prescribed.
If the facts alleged in a petition do not show that a claim has prescribed, the burden is on the party raising the objection of prescription to prove it. Conversely, if a claim is prescribed on the face of the pleadings, the burden is on the claimant to show that prescription has not tolled because of an interruption or a suspension of prescription. Boudreaux v. Angelo Iafrate Const., 03-2260 (La. App. 1st Cir. 2/4/05), 895 So.2d 596, 598. Thus, as to those funds received prior to December 1, 2005, Southern had the burden of showing why its claim had not prescribed. In light of its failure to oppose Coleman's exception or to present any evidence at the hearing on this matter, we are unable to find that Southern met its burden in this regard.
With regard to the money that he received on or after December 1, 2005, Coleman had the burden of proving that Southern's conversion claim had prescribed. In support of his exception,[3] Coleman offered an itemized list setting forth the names of the payor, payee, and patient and the amounts that he received from attorneys for patients whom he had treated while employed by Southern. Copies of checks totaling $20,580.44, were also offered by Coleman. The earliest of these checks was dated August 22, 2002, and the latest check was dated April 10, 2003.[4] Coleman was the sole payee on all but two of the checks. Coleman and Southern were joint payees on one of those checks, and Capital City Chiropractic was the payee on the other. By this evidence, Coleman dispelled Southern's allegation that funds had been received by Coleman in 2005. In the absence of any contrary proof by Southern, we find no error in the trial court's judgment sustaining the objection of prescription.
On appeal, Southern contends that the trial court erred in sustaining Coleman's exception, because Coleman's attorney was currently holding funds belonging to Southern, thereby giving rise to a continuing tort, and because in February 2007, Coleman acknowledged that he was holding funds claimed by Southern. These contentions are premised on the fact that the one-year prescriptive period applicable to actions for conversion was either interrupted, suspended, or renounced.
When the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated. South Central Bell Telephone Co. v. Texaco, Inc., 418 So.2d 531, 533 (La. 1982). Southern asserts that the actions of Coleman constituted a continuing tort, and thus prescription did not begin to run. This argument lacks merit. The receipt and deposit by Coleman of funds belonging to Southern into his account, and Southern's subsequent seeking of payment from Coleman for each respective check, constituted a separate conversion with separate damages. Based on the facts alleged by Southern, there is neither a continuous action on the part of Coleman nor a continuous damage suffered by Southern, both of which are necessary to find a continuing tort. See Metro Elec. & Maintenance, Inc. v. Bank One Corp., 05-1045 (La. App. 3rd Cir. 3/1/06), 924 So.2d 446, 451.
Relative to Southern's argument pertaining to an acknowledgment, we note that prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe. See LSA-C.C. art. 3464. An acknowledgement halts the progress of prescription before it has run its course. See LSA-C.C. art. 3449, Revision Comments1982, comment (c). Once prescription has run, acknowledgment is no longer applicable;[5] the applicable doctrine is then "renunciation." Lima v. Schmidt, 595 So.2d 624, 631-32 (La. 1992). Renunciation of prescription is the technical term designating the abandonment of rights derived from an accrual of prescription. LSA.C.C. art. 3449, Revision Comments1982, comment (c).
Because renunciation obliterates the effect of prescription that has run, it is subject to more stringent requirements than acknowledgment. Slaughter v. Arco Chemical Co., 0S-0657 (La. App. 4th Cir. 4/26/06), 931 So.2d 387, 393. The renunciation of prescription already accrued, being in the nature of the renewal of an obligation, must be specifically proven, and although it may be made tacitly, it must result from a fact which gives a presumption of the relinquishment of the right acquired by prescription and such fact must be necessarily and strongly connected with the debt which the party intended to revive. See Geiger v. State ex rel. Dept, of Health and Hosp., 01-2206 (La. 4/12/02), 815 So.2d 80, 86. In the absence of such proof, we are unable to conclude that Coleman made a new promise to return the money to Southern. Therefore, we find that Southern's argument lacks merit.
Lastly, Southern contends that the trial court erred in sustaining Coleman's exception, because its suit is for damages for breach of contract that is governed by a 10-year prescriptive period. Considering the pleadings, we are unable to find that Southern set forth sufficient facts to state a cause of action for breach of contract. For these reasons, we likewise find no abuse of discretion in the trial court's denial of Southern's motion for new trial.

Decree
For the foregoing reasons, the judgments of the trial court are affirmed. Costs of this appeal are assessed to Southern Chiropractic and Sports Rehabilitation Center, Inc.
AFFIRMED.
NOTES
[1] Although the denial of a motion for new trial is generally a non-appealable interlocutory judgment, the court may review interlocutory judgments as part of an unrestricted appeal from a final judgment. Bailey v. Robert V. Neuhoff Limited Partnership, 95-0616 (La. App. 1st Cir. 11/9/95), 665 So.2d 16, 18, writ denied, 95-2962 (La. 2/9/96), 667 So.2d 534.
[2] An injured party has constructive notice of his condition when he possesses information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry. Boyd v. B.B.C. Brown Boveri, Inc., 26,889 (La. App. 2nd Cir. 5/10/95), 656 So.2d 683, 688, writ not considered, 95-2387 (La. 12/8/95), 664 So.2d 417.
[3] Evidence may be introduced when deciding the issue of prescription. LSA-C.C.P. art. 931.
[4] According to Coleman's supporting memorandum, upon receipt of the checks, the funds were placed in an escrow account to offset a claim for unpaid compensation owed to him by Southern.
[5] After a claim has prescribed, one may acknowledge a debt, and even pay part of it, without renouncing the prescription acquired on it. Succession of Slaughter, 108 La. 492, 32 So. 379 (1902),