# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-982


**MILLARD P. DUMESNIL, III**

**VERSUS**

**SOUTHWEST LOUISIANA ELECTRIC MEMBERSHIP CORP.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 68734
HONORABLE LORI ANN LANDRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED.**


Gerald C. deLaunay
Perrin, Landry, deLaunay, Dartez & Ouellet
P. O. Box 53597
Lafayette, LA 70505
Counsel for Plaintiff/Appellant:
    Millard P. Dumesnil, III

Michael W. Adley
Judice and Adley
P. O. Drawer 51769
Lafayette, LA 70505-1769
Counsel for Defendant/Appellee:
    Southwest Louisiana ElectricMembership Corp.

James T. Guglielmo
Guglielmo, Lopez, Tuttle, Hunter & Jarrell
P.O. Drawer 1329
Opelousas, LA 70571-1329
Counsel for Third Party Defendant/Appellee:
    M. P. Dumesnil Construction Co.

Pickett, J.

The plaintiff, Millard P. Dumesnil III, appeals a judgment of the trial court, rendered in accord with a jury verdict, finding the defendant, Southwest Louisiana Electric Membership Corporation (SLEMCO) free from fault in the accident in which the plaintiff was injured. We affirm the judgment of the trial court.

**FACTS**

M. P. Dumesnil Construction Company (M.P.D.) was contracted to lay a water line for St. Martin Parish Water District # 3. Work in the vicinity of Louisiana Highway 92 and Duchamp Road in St. Martin Parish required the boring under each roadway and the connection of the bores by a trench to accommodate the water line. On August 11, 2004, Robert Dupre, an employee of M.P.D., began digging a trench to connect the two bore-holes. One bore-hole had been completed the day before, and a crew from M.P.D. was working on the second bore-hole. In the process of digging the trench, Mr. Dupre dug adjacent to a power pole owed by the defendant, SLEMCO. A few minutes after the trench progressed past the pole, the side of the trench adjoining the pole collapsed uncovering several feet of the pole which had formerly been buried. This required that Mr. Dupre go back and dig out the caved-in mud in order to maintain the required depth of the trench. In another few minutes, the pole leaned over causing the high-voltage electric transmission line attached thereto to come in contact with two workers at the site: Jeffery A. Weaver, a Dow Chemical Company employee, who was killed, and Millard P. Demesnil III, an M.P.D. employee, the plaintiff herein, who suffered severe electrical burns.

Subsequently, Mr. Dumesnil filed this suit against SLEMCO alleging that SLEMCO was negligent in the design and installation of its transmission system and

in not installing guy wires on the pole that fell over. The case was tried to a jury over five days. The jury found SLEMCO not at fault in the accident, and the plaintiff appeals.

## LAW AND DISCUSSION

Due to the nature of the product in which they deal, the duty owed by electric transmission companies which maintain and employ high power lines to distribute electricity is higher than that of the "ordinary man." In *Foley v. Entergy Louisiana, Inc.*, 06-983, pp. 11-12 (La. 11/29/06), 946 So.2d 144, 154-55 (emphasis ours) our supreme court set out a thorough analysis on the subject:

> In cases of injury occurring as a result of contact with overhead power lines, principles of negligence, rather than absolute or strict liability, apply, and we assess the liability of the various parties to the accident under a duty-risk analysis. *Hebert v. Gulf States Utilities Company*, 426 So.2d 111, 114 (La.1983); *Kent v. Gulf States Utilities Company*, 418 So.2d 493 (La.1982). To establish the liability of an electric utility company using the duty-risk analysis, the plaintiff has the burden of proving: (1) that the defendant power company owed a duty to the plaintiff; (2) that the power company breached that duty; (3) that the power company's conduct was a cause-in-fact of the plaintiff's injuries; (4) that the power company's substandard conduct was a legal cause of plaintiff's injuries; and (5) that the plaintiff suffered actual damages. *Perkins v. Entergy Corporation*, 00-1372, 00-1387, 00-1440, p. 7 (La.3/23/01), 782 So.2d 606, 611; *Fowler v. Roberts*, 556 So.2d 1, 4 (La.1989) *on reh'g*, 556 So.2d at 13 (La.1990); *Fleniken v. Entergy Corporation*, 00-1824 (La.App. 1 Cir. 2/16/01), 780 So.2d 1175, 1184, *writ denied*, 01-1268, 01-1305, 01-1317 (La.6/15/01), 793 So.2d 1250, 1253, 1254.

> In *Simon v. Southwest Louisiana Electric Membership Corporation*, 390 So.2d 1265, 1267 (La.1980), we summarized the duty of an electric utility company in cases involving injury sustained through contact with high voltage lines. Given the inherently dangerous nature of electricity, we held that electric companies that use and maintain high voltage power lines are required to exercise the utmost care to reduce hazards to life as far as is practicable. *Id.* If it should be reasonably anticipated that persons may come into contact with electric lines, the owner and/or operator of those lines is required to insulate them, or to give adequate warning of the danger, or to take other proper and reasonable precautions to prevent injury. *Id.* However, *an electric*

2

*company is not under a duty to safeguard against occurrences that cannot be reasonably expected or contemplated*: "[O]perators of power lines are not required to anticipate every possible accident which may occur and are not the insurers of safety of persons moving around power lines in the course of everyday living." *Simon*, 390 So.2d at 1268. *When an accident or occurrence could not have been reasonably anticipated, it is not within the scope of the duty owed by the electric company to the injured party because there is no ease of association between the risk presented by the electric company's conduct under the overall circumstances and the resulting injury.* *Hebert*, 426 So.2d at 114.

Nevertheless, an electric company is held to the standard of a reasonable person with superior attributes, and is required to recognize that there will be a certain amount of negligence that must be anticipated. *See Levi v. Southwest Louisiana Electric Membership Cooperative (SLEMCO)*, 542 So.2d 1081, 1084-1086 (La.1989); *Pillow v. Entergy Corporation*, 36,384, p. 5 (LaApp. 2 Cir. 9/18/02), 828 So.2d 83, 87, *writ denied*, 02-2575 (La.12/13/02), 831 So.2d 987. Pursuant to this duty, an electric company has an obligation to make reasonable inspections of wires and other instrumentalities in order to discover and remedy hazards and defects. *Levi*, 542 So.2d at 1084. This duty includes the obligation to inspect its lines to determine if uninsulated high voltage lines pose a risk of harm, and if the utility relies on insulation by isolation, it has a duty to make certain its lines remain isolated. *Hebert*, 426 So.2d at 116; *Fleniken*, 00-1824 at 13, 780 So.2d at 1186.

After reviewing the testimony and the evidence we cannot say that the jury was manifestly erroneous in finding SLEMCO free from fault in causing this accident. The plaintiff argues that the pole was unbalanced and should have been supported by a guy-line; and that, if the pole had been so supported, it would not have fallen over. It was established that the pole which was involved in the accident was larger and was buried deeper than required. It had been in place for approximately twelve years and showed no sign of leaning, much less falling over.

Robert Dupre, the "trackhoe" operator who dug the trench, testified that he originally dug the trench eighteen inches wide by about five feet deep, approximately thirty inches from the pole. He stated that after he had trenched some distance past

the pole, the side of the trench next to the pole fell into the trench. As a result of the collapse, he had to go back and "dig it out," widening the trench to about three feet at the site of the pole. Widening of the trench exposed one to three feet of the pole which had heretofore been buried, depending upon whose testimony one believes. At no time after exposing the buried portion of the pole did Dupre notify his supervisor, Jimmie Meyers, that he had exposed a previously buried portion of the pole. Neither did he take any steps to support the pole. Nor had Dupre obtained permission from Meyers to dig the trench. It was Meyers' job to designate where the trench was to be dug.

Jim Lackey, SLEMCO's Director of Engineering, testified that although there was no guy-line on the pole, it was kept in balance by the use of a "slack span" and the depth to which the pole was buried. Lackey testified as follows:

> If the pole is not in balance, then it is going to fall down. The pole, before the — What happens is that there is — The slack span does cause some tension — about less than 100 pounds of tension — in that line. The slack span: there is about 100 pounds of tension in that line. That 100 pounds of tension is countered, or counter-balanced by the ground, the forces acting on the pole in the ground. So at that point in time, the forces are balanced by the foundation, and our foundation was the packed dirt around the pole. Now when we remove the foundation, the pole becomes imbalanced at that point in time, and it does have to fall.
> . . . .
>
> What I am saying is: The forces were not balanced when the foundation was removed.

Dr. Michael Aucoin, a plaintiff's expert with an Ph.D. in electrical engineering from Texas A & M, was shown pictures taken at the site the day of the accident. When questioned at trial he stated that "[b]ased upon the photographs it appears that the excavation was directly adjacent to the pole." He was then asked if trenching next to a pole to the depth depicted in the photographs would raise any concerns, he stated:

4

"as an engineer I would be concerned about excavating down to near the bottom of a pole, right adjacent to the pole." Dr. Aucion concluded that had the trench not been dug, the pole would not have fallen.

In *LaCombe v. Bank One Corp.*, 06-1374 (La.App. 3 Cir. 3/7/07), 953 So.2d 161, *writ denied*, 07-0746 (La. 6/1/07), 957 So.2d 177, a panel of this court reminded us that factual determinations by the trial court must be reviewed under the manifest error standard of review. We stated the following:

> In *Salvant v. State*, 05-2126, p. 5 (La.7/6/06), 935 So.2d 646, 650 (footnote omitted), the supreme court reminded us of the following:
>
>> Under the manifest error standard of review, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. *Smith v. Louisiana Dept. of Corrections*, 93-1305 (La.2/28/94), 633 So.2d 129, 132; *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993); *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirely and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Id.* The appellate court must not re-weigh the evidence or substitute its own factual findings because it would have decided the case differently. *Id.*; *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 (La.4/3/02), 816 So.2d 270, 278-79. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* However, where documents or objective evidence so contradict the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. *Rosell*, *supra* at 844-45. But where such factors are not present, and a fact finder's finding is based on its decision to credit the testimony of one or two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. *Id.*

*LaCombe*, 953 So.2d at 166.

5

Additionally, we note that as in this case, "[w]hen the district court has allowed both parties to present their experts before making its factual determinations, the fact finder's choice of alternative permissible views cannot be considered to be manifestly erroneous or clearly wrong." *Toston v. Pardon*, 03-1747, p. 12 (La. 4/23/04), 874 So.2d 791, 800.

Our review of the testimony and evidence convinces us that the jury was presented with adequate evidence with which to support its conclusion that SLEMCO was free from fault in causing this accident. Accordingly, for the reasons stated, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Millard P. Dumesnil, III.

**AFFIRMED.**